Argued 3 April; decided 24 April, 1899.

## FRINK v. HOKE.

[56 Pac. 1093.]

1. VENDOR AND PURCHASER — BEGINNING OF STATUTE OF LIMITATIONS.— Where the courts have refused to entertain jurisdiction of a suit to recover lands because a controversy concerning them was then pending between the parties in the Land Department of the United States, the statute of limitations does not begin to run against the right to recover such lands until after the termination of that controversy.

2. ENTRY OF PUBLIC LANDS FOR USE OF ANOTHER—PUBLIC POLICY.—A person holding a contract to purchase lands from one supposed to be the owner executed a bond to convey them to another as soon as he procured the title. The lands were afterwards discovered to be public lands, and the parties to the latter contract then agreed that the obligee in the bond should obtain title by filing on the lands as a homestead, and pay his vendor the price originally stipulated, less any damages which the latter might recover for the failure of title from the supposed owner who executed the original contract. Held, that the agreement did not contemplate that the obligee should procure the title from the government for the benefit of his vendor, and hence was not against public policy, as in violation of Rev. St. U. S. §§ 2290, 2291, requiring the filer of a homestead entry to make affidavit that the entry is for actual settlement and cultivation, and not for any other person.

3. BOND FOR DEED—SUPERIOR TITLE BOUGHT BY VENDEE.—On the rescission of a contract to sell by the vendor because the purchaser refused to pay after having procured an outstanding superior title, the latter will be considered a trustee of such title for the vendor, and will not be permitted to assert such title against him: Frink v. Thomas, 20 Or. 266, cited. ·

35 OR.—2.

From Polk :   Henry H. Hewitt, Judge.

Suit commenced originally by William S. Frink against
John Thomas for certain equitable relief, which is fully
stated in the opinion.   Both parties having died, Jane
Frink and others were substituted for plaintiff, and B. F.
Hoke and others for defendant.   There was a decree for
plaintiffs, and defendants appealed.          Affirmed.

For appellants there was a brief over the name of
*Butler & Townsend,* with an oral argument by *Mr. Butler.*

For respondents there was a brief over the names of
*Daly, Sibley & Eakin,* and *Holmes & Kellogg,* with an oral
argument by *Messrs. William H. Holmes* and *J. J. Daly.*

Mr. Chief Justice Wolverton delivered the opinion.

This is a suit to cancel and annul a contract for the
sale of real property, made and entered into between W.
S. Frink and John Thomas, to have Thomas declared a
trustee of the legal title to the northeast ¼ of section 3,
township 9 south, range 6 west of the Willamette Me-
ridian, containing one hundred and sixty acres, being a
portion of the land contracted to be conveyed ;   and for
an accounting of rents and profits.   Both parties having
died since suit was instituted, plaintiffs were substituted
for Frink, and B. F. Hoke, administrator, *et al.,* for de-
fendant.   The facts, about which there is very little con-
troversy, as shown by the record, are as follows :   W. S.
Frink, the ancestor of the plaintiffs, moved upon said
quarter section in 1870, and, upon making inquiry of
the government with a view of entering it as a home-
stead, was informed that it had been previously entered
by one Grant, but was subsequently notified that Grant's
filing had been canceled, and that the land had inured to

the Oregon & California Railroad Company. He there-
upon procured a contract from the company for the pur-
chase thereof, and, on February 13, 1880, while the title
was thus supposedly in that condition, of which Thomas
was fully apprised, he entered into a contract for the
sale to him of three hundred and sixty acres of land,
including said quarter section. It was understood that
Frink would have to acquire the title to the one hun-
dred and sixty-acre tract from the Oregon & California
Railroad Company before he could make the convey-
ance. He purchased the other two hundred acres from
the state and railroad company, paying therefor in full
before the controversy arose. Frink in the meanwhile
had improved the one hundred and sixty-acre tract by
constructing a house and stock shed thereon, building
fences, clearing a portion thereof, and setting out a small
orchard, the entire value of which at the time was be-
tween $1,100 and $1,200. Thomas went into possession
under the agreement, and so continued until about the
first of March, 1883, when he was informed by W. P.
Wright, the county surveyor, that the one hundred and
sixty-acre tract was government land, subject to entry,
and that other parties were about to file upon it as a
homestead. Upon obtaining this information, he filed
upon it at once, and on March 5, 1883, notified Frink as
follows: "I was in town Friday, and learned through
Mr. Wright that there was a flaw in the title to the north-
east quarter of section 3, and that it was susceptible of
homestead; so, to prevent any trouble, I filed on it, as
there were parties about to jump it. Please meet me in
Dallas on Saturday, March the 10th, and let us fix up
the matter some way." In pursuance of this notice,
Frink met him in Dallas about the date named, and,
after discussing the matter, it was substantially agreed
that Thomas should continue in possession, secure the

title to the property from the government, and that he should have the benefit of whatever sum Frink should thereafter recover from the railroad company on account of the payments he had theretofore made for the land, which should be indorsed upon the Thomas notes given to Frink for the purchase price. This understanding was sworn to positively by Frink, and corroborated by the testimony of M. M. Ellis, to whom a statement of it was made at the time by both parties. Frink at the same time paid Thomas $13, to reimburse him for the amount expended in making the homestead entry. It is alleged that this payment was made to Thomas upon his request for the express purpose of reimbursing him for his outlay in making said entry of homestead, and, while there is some discrepancy in the testimony, we think the preponderance of proof is to that effect.

Subsequently, about October 1, 1883, Thomas had a notice published in a Dallas newspaper, notifying all persons that the promissory notes which Frink held against him for the purchase price of the property were without consideration, and void ; that he was not bound by them, and would not pay the same, nor any part thereof. Frink afterwards instituted a suit to rescind the contract for want of such payment, and to be declared the owner of the one hundred and sixty-acre tract in the event that Thomas should be awarded the patent in the contest then pending before the interior department. The suit to rescind was decided against Frink, for the reason, among others, that he did not offer to perform, or return the money and notes, and for the further reason that this court could not determine the controversy while a dispute touching the rights of the parties to the patent was pending in the land department. Patent was issued to Thomas in March, 1893. Prior to the publication of the notice touching the notes, Thomas had paid $340 of

the principal thereof, and $382.75 interest. About November 24, 1893, Frink, in writing, tendered to Thomas a warranty deed to the two hundred acres of land for which he then held the title, and a quitclaim deed to the one hundred and sixty-acre tract, relinquishing all his right, title, and interest therein, together with the unpaid notes, and demanded payment of the balance due of said consideration, and at the same time notified him that, in the event of his failure to comply with the terms of the demand on or before December 5, 1893, he would elect to rescind and would declare said contract of sale for all of said lands rescinded. By the same writing he also tendered the moneys theretofore paid upon the contract, with interest, but upon condition that, in the event of rescission, the value of the use of said land would be claimed as an offset to said moneys. The demand not being complied with, this suit was brought for the purpose above named. Thomas, by his answer, put in issue the material allegations of the complaint, and, for a further defense, set up, among other things, that he was induced to enter into the contract by Frink claiming to be the owner of the legal title, when, in truth and in fact, the title to the one hundred and sixty-acre tract was in the government, and that, in order to obtain such title, he entered the same as a homestead, and in due course obtained the patent; that said tract constituted the principal consideration and inducement for making and entering into said contract; that its relative value was $1,350, while the remaining two hundred acres were worth only $250, and that the $722 paid by him was in excess of the value of said two hundred acres in the sum of $382; and that, by reason of the failure on the part of Frink to convey the title, he was damaged in that sum. It was further alleged that, soon after entering

into the said contract, Frink wholly abandoned the premises, with fraudulent intent, well knowing that the said one hundred and sixty-acre tract belonged to the public domain, and was subject to homestead entry, and on or about July 1, 1883, made a homestead filing on other lands belonging to the general government, and that said entry continued in force until March 6, 1891, when it was canceled by the commissioner of the general land office. Aside from this, the answer set up adverse possesion, and prayed a decree against plaintiffs for the sum of $382 as damages, and that they be required to make, execute, and deliver to defendant a deed to the two hundred acres, and that he be adjudged and decreed to be the owner of the one hundred and sixty-acre tract, and for general relief.

1. As a preliminary question, it is insisted that, because plaintiffs have alleged that Thomas abandoned and repudiated his contract on October 1, 1883, they have virtually admitted his disavowal of their title; hence, that the statute of limitations began to run at that time in his favor, and, suit not having been instituted until December 8, 1893, that he has acquired a perfect title by adverse possession. This defense, however available under ordinary circumstances, cannot be invoked in the present controversy. When the case was formerly here, it was determined that, as there was a controversy pending before the Land Department of the United States touching the relative rights of the parties to the patent to said land, this court would not entertain jurisdiction to settle the dispute under the contract until after that tribunal had decided the matter before it. See 20 Or. at p. 273 (25 Pac. 717). It is clear, therefore, that the statute of limitations could not run in favor of Thomas until such time as plaintiffs were entitled to institute a

suit in this jurisdiction with a view of ascertaining the relative rights of the parties touching the land under the contract.

2.   But the strong contention in behalf of Thomas is that, the contract having been made and entered into while the title to the one hundred and sixty-acre tract was yet in the general government, and Frink having alleged a modification thereof, whereby it was agreed and understood that Thomas should proceed to acquire the title from the government under the homestead law, and that, when acquired, it should inure to Frink's benefit, it would be contrary to law and public policy to have Thomas declared a trustee of the legal title thus acquired from the government for the use and benefit of Frink, or his heirs.   It is claimed that it is unlawful for any person to obtain title to public lands in trust for and for the use and benefit of another, in view of the requirements of the federal statute that every person claiming the benefit of the homestead act shall, before being allowed to enter any lands by virtue thereof, make affidavit that his application is made for his own exclusive use and benefit, and that such entry is for the purpose of actual settlement and cultivation, and not directly or indirectly for the use or benefit of any other person or persons whomsoever, and the further provision that no certificate shall be given or patent issued until the applicant shall make affidavit that no part of said land has been alienated (Sections 2290, 2291, Rev. St. U. S.) ;   and hence, if the prayer of the complainant is granted, it will operate in contravention of statutory enactment and public policy, as it would afford opportunity and excuse to the applicant for the violation of his oath.

The defendants cite several authorities in support of this contention, among them *Clark* v. *Bayley*, 5 Or. 343 ; *Warren* v. *Van Brunt*, 86 U. S. (19 Wall.) 646 ; *Marshall*

v. *Cowles,* 48 Ark. 362 ( 3 S. W. 188) ; *Oaks* v. *Heaton,* 44 Iowa, 116 ; *Robinson* v. *Jones,* 31 Neb. 20 (47 N. W. 480) ; but we think they are not adapted to the application which is sought to be made of them. The Iowa case is an illustration of all. The plaintiff therein held a valid pre-emption claim under the laws of the United States, had erected a dwelling house and made substantial improvements thereon, but was thereafter induced to sell his right and claim to Lucius R. Heaton, under an agreement that Heaton enter the same as a homestead, take and hold it, and perfect his title thereto under the laws of the United States, and, when thus perfected, that he would convey to the plaintiff, by a good and sufficient deed, one-half the premises. It was held in that case that the contract was in contravention of the homestead laws, and that, before Heaton could comply with his contract, and secure title from the government, he would be required to make a false oath or affidavit, and that by reason of this fact the contract was contrary to public policy, and could not be enforced. It will be noticed that the contract touching the land was concerning the obtainment of the title from the government, and thereafter it was agreed that a conveyance should be made of one-half ; and of like effect are the other authorities alluded to.

The situation of the present controversy is this : Frink, in good faith, believing he would be able to obtain a valid title to the land from the railroad company, entered into the contract in question. Thomas was informed of the condition of affairs, and whatever he did in the premises was done with full knowledge thereof. There was no attempt to formulate contract relations whereby the one party or the other should be required to obtain the title from the government before making conveyance. In fact it was supposed that the

government had theretofore devested itself of title. When it was subsequently ascertained, however, that the railroad company had not acquired title, but the government was still the owner of the land, and that it was subject to homestead, the modified agreement was entered into ; yet, in its modified form, it did not contemplate that the title should then be obtained by Thomas in trust for Frink. The intendment was that Thomas should, in pursuance of the original contract, procure the title from the government for his own use and benefit, and this was for the express purpose of relieving Frink from the impossible obligation of acquiring the land from the railroad company, and thereafter conveying it to Thomas ; in other words, the modified agreement contemplated that, instead of Frink conveying, as he had formerly covenanted to do, Thomas would get the title direct from the government, but that in other respects the original contract should remain in effect the same, except there was a reduction to be made in the consideration by the amount of the money to be recovered by Frink of the railroad company. So we find there was no undertaking on the part of Thomas to obtain the title for Frink, but there was a lawful attempt on the part of both parties to carry out the purpose of the original contract, and, in pursuance of its intendment, to vest title in Thomas.

3. But he attempted to repudiate his contract with Frink, and to acquire the title from the government as though no agreement had been entered into between them. This was an attempt to get the outstanding title when he had entered into possession under Frink, and was a violation of their contractual relations respecting it. When the case was here before, it was decided that if a vendee buys up a better title than that of the vendor, while holding under contract for a conveyance of such

title, he will be held, in equity, to be the trustee of such title, and to have obtained it for the use and benefit of the vendor. This rule has application where the contract has been entered into in good faith, and not with a view to contravene any law touching its acquirement where the title is yet in the government : *Galloway* v. *Finley*, 37 U. S. (12 Pet.) 264 ; *Bush* v. *Marshall*, 47 U. S. (6 How.) 284. The contract in question, either as originally stated, or in its modified form, did not contemplate nor involve any violation of law. Thomas could, in good conscience, make oath that he had made the entry of his homestead for his own use and benefit, and not for another, and yet he could have fulfilled his every obligation to Frink, without being guilty of any inconsistent act in doing so. But it is argued that Frink would have had to violate the law and his own conscience if he had undertaken to homestead, and then to convey. Conceding that such would have been the case, it does not help Thomas. He went into possession under Frink, and in pursuance of the contract of purchase, and he cannot avail himself of the privilege of the homestead act, and acquire title as against Frink, while sustaining such relations to him. He should have surrendered to Frink, and, if then Frink had not claimed or was not in a position to claim the homestead, he could have made the entry, and not otherwise. This being so, it is apparent that the plea that Frink had entered a homestead upon other lands in July following the date of the contract cannot avail as a defense. The former opinion indicated quite clearly the method or course which the plaintiffs would be required to pursue before a suit could be maintained to rescind the contract, and to have Thomas declared the trustee of the plaintiffs, as it respects the one hundred and sixty-acre tract. They have adopted in detail the requirements of the opinion in

bringing the present suit, and their standing may be said to be grounded, in a large measure, upon the law of the case.

In so far as the accounting is concerned, it is established by the evidence that the reasonable rent of the premises was $100 per year, amounting to $1,400. This exceeds but slightly, if at all, the outlays of Thomas, including interest, as it respects the purchase price, and plaintiffs should recover nothing for such rents and profits. It is proper to add, in this connection, that it does not appear by the record what amount, if any, Frink recovered from the railroad company on account of the said one hundred and sixty-acre purchase. The decree of the court below will be affirmed.

AFFIRMED.