E. E. CASTOR, Appellant, v. E. T. DUFUR, Appellee.

Action for breach of warranty: ESTOPPEL TO DENY VENDOR'S TITLE.
1  One who, through mesne conveyances, receives from his grantor by warranty deed all rights acquired by the latter through a tax deed, though void, but under which the land was occupied and improved, and also all rights acquired through a quit claim deed from a railway company under a claim that the same was indemnity land although this claim was subsequently rejected by the government, acquires thereby a preferential right to make a homestead entry and upon occupancy and improvement to receive a patent from the government; and, having thus procured a patent he cannot say that it is the source of an independent title, that he acquired nothing under his deeds from his grantors and recover of them the purchase price, in an action for breach of a covenant of warranty as to seisin.

Covenants: BREACH: DAMAGES. One who withholds from the
2  purchase price of land a sum with which to perfect his vendor's title and for a less sum procures a patent to the land

from the general government, can only recover nominal damages for a breach of his vendor's covenant of seisin; and for failure to recover nominal damages a reversal will not ordinarily be ordered.

*Appeal from Union District Court.*— HON. H. M. TOWNER, Judge.

THURSDAY, MARCH 7, 1907.

ACTION for breach of a covenant of warranty as to seisin made in a deed by one of plaintiff's remote grantors. Defendant interposed many defenses, some of which will be referred to in the body of the opinion. The case was tried to the court, a jury being waived, as a law action, resulting in a judgment dismissing plaintiff's petition, and he appeals.— *Affirmed.*

*Temple, Hardinger & Temple,* for appellant.

*Jas. G. Bull* and *E. D. Samson,* for appellee.

DEEMER, J.— Primarily the controversy is over the title to forty acres of land in Clarke county, Iowa, known as the " S. E. ¼ of the N. E. ¼ of section 11, twp. 73,

1. ACTION FOR BREACH OF WARRANTY: estoppel to deny vendor's title.

range 37." There seem to be three separate and to some extent independent sources of title. One through tax deeds executed by the treasurer of Clarke county, Iowa, as early as the year 1872; another a quitclaim deed to one of plaintiff's remote grantors from the Chicago, Burlington & Quincy Railroad Company, of date March 27, 1887; and a third a homestead entry made by plaintiff some time in the year 1903, which has since been commuted, and plaintiff now holds a patent from the United States government for the land. At the time the plaintiff purchased the land in controversy, which was in the year 1902, defects were discovered in the title, and he withheld of the purchase price due his imme-

diate grantor the sum of $92 to fix up the title, his grantor agreeing to perfect the same. It was discovered that there was no patent from the government; and, upon investigation, it was concluded for reasons hereinafter to be disclosed that plaintiff should make a homestead entry of the land, which he did in April of the year 1903, which has since been commuted, and plaintiff has received his patent from the government at an expense which amounted to less than the sum retained by him of the purchase price. No title to the land was acquired from the government until this patent was issued, and it is claimed that as defendant, Dufur, a remote grantor, made a deed containing covenants of warranty, he is liable to plaintiff thereon to the extent of the value of the lands. The Commissioner of the General Land Office, in recognizing plaintiff's right to make his entry, based it upon the ground that he (plaintiff) claimed to be a good-faith purchaser of the land under a chain of title commencing with a treasurer's tax deed dated April 23, 1872. It appears from the record that the land in controversy was supposed to be within the six-mile limit of the line of the Burlington & Missouri River Railroad Company, the predecessor in interest of the Chicago, Burlington & Quincy Railroad company, and that it passed under the acts of Congress of the year 1856, supplemented by the acts of the Fifth General Assembly of this State. But upon investigation it was found that the land was not within these limits. It was then selected as indemnity land within the fifteen-mile limit under other congressional enactments; but claim under these grants was rejected April 11, 1903.

The Commissioner of the General Land Office in canceling the selection wrote the register at Des Moines, Iowa, "to hold the tract subject to entry by the first legal applicant." Before the selection as indemnity land had been rejected, the Chicago, Burlington & Quincy Railroad Company, successor in interest to the Burlington & Missouri River Railroad Company, conveyed the land by quitclaim

deed to one Hoffman, one of plaintiff's remote grantors; the expressed consideration being the sum of $100. The tax deed was issued, as before stated, but under the record it was void, for title to the land had not passed from the general government and the land was not subject to taxation. But in the year 1875 Anderson, one of the plaintiff's grantors, who held title under the tax deed, went into the possession of the land, fenced, improved, and cultivated it, and it has ever since been in the actual possession of plaintiff and his remote grantors back to Anderson. As soon as plaintiff discovered that the selection of the land by the railway company had been rejected, he was advised to make an entry thereof under the homestead act; and within a few days thereafter he made a homestead entry for said tract, which was granted by the Commissioner upon the ground heretofore stated, to wit, that he was a good-faith purchaser of the land. That he was such good-faith purchaser the record clearly discloses, although the only basis of his title at that time was a void tax deed and a selection by the railway company, which was afterward canceled. Of course, the tax deed was void and the selection by the railway company of the property as idemnity lands of no force because finally canceled; but some of the plaintiff's remote grantors thought they obtained title from the railway by deed, and others thought they held good title under the tax deed, and valuable improvements were made upon these lands in the belief that title had passed to the railway company. It has been the policy of the general government to favor actual settlers upon public lands, and, as said in *Ard v. Brandon,* 156 U. S. 543 (15 Sup. Ct. 409, 39 L. Ed. 524), "the law deals tenderly with one who in good faith goes upon public lands with a view to make a homestead."

By acts of Congress approved January 13, 1881 (21 Statute 315, chapter 19 [U. S. Comp. St. 1901, page 1594]), for the relief of settlers on restored railroad lands, special privileges are granted to settlers to purchase their

lands from the government; and by act of September 29, 1890 (26 Statute 496, chapter 1040 [U. S. Comp. St. 1901, page 1598]), providing for forfeiture of certain lands granted railroads, it is provided that settlers thereon "shall be entitled to preference in entering the same under the homestead law." Now by act of Congress approved March 3, 1887 (24 Statute 556, chapter 376 [U. S. Comp. St. 1901, page 1595]), providing for the adjustment of railway land grants, those who have purchased lands from railways the title to which had failed were given special privileges. The act contained these provisions:

Sec. 5. That where any said company shall have sold to citizens of the United States, or to persons who have declared their intentions to become such citizens, as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any reason exempted from the operation of the grant to said company, it shall be lawful for the *bona fide* purchaser thereof from the said company to make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patents shall issue therefor to the said *bona fide* purchaser, his heirs and assigns. Provided, that all lands shall be excepted from the provisions of this section which at the date of such sales were in the bona fide occupation of adverse claimants under the pre-emption or homestead laws of the United States, and since been voluntarily abandoned, as to which excepted lands the said pre-emption and homestead claimants shall be permitted to perfect their proofs and entries and receive patents therefor: Provided, further, that this section shall not apply to lands settled upon subsequent to the first day of December, 1882, by persons claiming to enter the same under the settlement laws of the United States, as to which lands the parties claiming the same as aforesaid shall be entitled to prove up and enter as in other like cases.

The Commissioner of the General Land Office issued

the following circular with reference to the construction of the act:

Under this section, when the company has sold to citizens of the United States or persons who have declared their intentions of becoming such citizens, the numbered sections prescribed. in the grant coterminous with the constructed portions of the road, within either the granted or indemnity limits and which upon the adjustment of the grant are shown to be excepted from the operation of the grant, it shall be lawful for such purchasers (if the purchases are bona fide) to purchase said land from the government, by payment of the government price for like lands, unless said lands were at the date of purchase in the bona fide occupancy of adverse claimants under the pre-emption or homestead laws. Applicants to purchase under this section will be required to publish notice of intention as directed under the third and fourth sections and the proof must show: (1) That the tract was of the numbered sections prescribed by the grant. (2) That is was coterminous with the constructed parts of the said road. (3) That it was sold by the company to the applicant, or one under whom he claims as part of this grant. (4) That it was excepted from the operation of the grant. (5) That at the date of the said sale it was not in the bona fide occupancy of adverse claimants under the pre-emption or homestead laws whose claims and occupancy have not since been voluntarily abandoned. (6) That it has not been settled upon subsequent to the first day of December, 1882, by any person or persons, having the right to enter the same under the settlement laws. That the applicant is or has declared his intention to become a citizen of the United States. (8) And that he or the one under whom he claims was a bona fide purchaser of the land from the company. The proof upon these points having been found satisfactory, the entry will be allowed, and the usual cash certificate and receipt will be issued reciting the fact that the entry is in accordance with the fifth section of the act of March 3, 1887.

Other instructions were as follows:

Settlers within railroad limits who have purchased from a railroad company lands in railroad sections which are

afterwards for any cause restored to the public domain are entitled to make entry of the lands so occupied by them under the general provisions of the settlement laws.

See, also, the following from the rules of practice in the several land offices:

Rule 37. The register and receiver will be careful to reach, if possible, the exact condition and status of the land involved by any contest, and will ascertain all the facts having any bearing upon the rights of parties in interest. .

Rule 38. In pre-emption cases they will particularly ascertain the nature, extent and value of the alleged improvements; by whom made, and when; the true date of the settlement of persons claiming; the steps taken to mark and secure the claim, and the exact status of the land at that date as shown upon the records of their office.

Rule 39. In like manner, under the homestead and other laws, the conditions affecting the inception of the alleged right, as well as the subsequent acts of the respective claimants, must be fully and specifically examined.

There can be no doubt under these statutes and rules that Hoffman, the purchaser from the railroad company, had a preferential right to purchase the land from the government at the rate of $1.75 per acre, and that this right by certain mesne conveyances passed to plaintiff in this action. Moreover, plaintiff has exercised a preferential right to make homestead entry and commuted the same and received his patent in virtue of his possession and occupancy of the lands acquired remotely from defendant. He had the necessary qualifications to make a homestead entry, and although some of his remote grantors may not have had this privilege, he had it, and this is all that is required. *Union Colony v. Fulmele,* 16 Land Dec. Dep. Int. 273.

It is argued that Hoffman had no rights under his quitclaim deed from the railroad company. But that is not true. *U. S. v. Winona & St. P. R. Co.,* 165 U. S. 477 (17 Sup. Ct. 368, 41 L. Ed. 789). Although holding under a

quitclaim deed, he was for present purposes a good-faith purchaser. See *Osborn v. Knight,* 23 Land. Dec. Dep. Int. 216. It is immaterial that the land was selected as indemnity land by the railway company. The act of 1887 applies to such cases. See. volume 19, *Opinion of Atty. Gen.* (U. S.), 68 (6 Land Dec. Dept. Int. 275); *Lincoln v. Sowers,* 24 Land Dec. Dept. Int. 42. See, also, 34 Land Dec. Dept. Int. 630 *et seq.* for a history of these acts and of the act approved April 17, 1906. The act of 1887 manifestly applies to indemnity lands. But for the fact that plaintiff had been in possession under his deeds running back to Dufur, he could not have commuted his homestead entry, nor could he have entered the same by preferential right. Moreover, the act applies, although no certificates or patents were issued to the railroad company. See U. S. v. Winona County, *supra.* There is no doubt that under the statutes and rules of the Land Department plaintiff had a preferential right to make the homestead entry. We quote the following from the rules of the Interior Department:

Second. Where one has actual settlement and improvement and the other has not, it should be awarded to the actual settler.

Third. Where both allege settlement and improvement an investigation must be had and the right of entry awarded to the one who shows prior actual settlement and substantial improvements so as to be notice on the ground to any competitor. Settlers within railroad limits who have purchased from a railroad company land in railroad sections, which are afterwards for any cause restored to the public domain, are entitled to make entry of the lands so occupied by them under the general provisions of the settlement laws. The rules of practice require registers and receivers, in case of any contest before them, 'to reach if possible the exact status of the land involved by any contest and to ascertain all the facts having any bearing upon the rights of the parties in interest. In pre-emption cases, they will particularly ascertain, the nature, extent and value of the alleged

improvements; by whom made, and when; the true date of settlement of the persons claiming,' etc.   In like manner, under the homestead and other laws the conditions affecting the inception of the alleged rights as well as the subsequent acts of the respective claimants must be fully and specifically examined.

That these preferential rights are extended to homesteads, see *Atherton v. Fowler,* 96 U. S. 513 (24 L. Ed. 732); *Caldwell v. Carden,* 4 Land Dec. Dep. Int. 306; *Hall v. Smithson,* 25 Land Dec. Dep. Int. 135; *Rector v. Gibbon,* 111 U. S. 284 (4 Sup. Ct. 605, 28 L. Ed. 427). We think plaintiff secured preferential rights through the deeds to him, and that he is in no position to say that his patent is an entirely independent title; that, although he has paid but $50 therefor, he is entitled to recover from Dufur upon his covenants of warranty the full amount of the consideration received by Dufur from his grantee of the land.   Moreover, plaintiff, having obtained title as he did, is now estopped from saying that he received nothing under his deeds either from his immediate or remote grantors. *Bush v. Marshall,* 6 How. (U. S.) 284 (12 L. Ed. 440); *Davis v. O'Ferrall,* 4 G. Greene, 359; *Richards v. Iowa Co.,* 44 Iowa, 304; *Snell v. Iowa Co.,* 59 Iowa, 701.

Again, plaintiff's title has been fully perfected by an expenditure of less than the amount retained by him of the consideration to his immediate grantor; and, as he has not offered to return what he received under his deeds, he is in no position to complain.   His damages, if any, are nominal.   *Blood v. Wilkins,* 43 Iowa, 565; *Wachendorf v. Lancester,* 66 Iowa, 458; *Frick v. Hoke,* 35 Or. 17 (56 Pac. 1093).   Plaintiff undoubtedly acquired a valuable preferential right under his deed from Morey and the other deeds in that chain of title. He secured perfect title by the expenditure of less than he retained to secure it, and he is estopped from saying that he secured nothing under his deeds running back to Dufur.

2. COVENANTS:
breach:
damages.

That he secured a homestead rather than a pre-emption is of no moment. In no event is he entitled to more than nominal damages; and for failure to allow them we do not ordinarily reverse. None of the cases cited by appellants from appellate courts are in point. His counsel cite two opinions from *nisi prius* courts which tend to sustain his position but what is said therein is largely dictum, and in no event controlling. The matters arising on the appeal are ruled by the cases heretofore cited. We might under the doctrine announced in *Hews v. Stonebreaker,* 132 Iowa, 608, refuse to consider the case; but have concluded to dispose of it on the merits.

. The judgment is right, and it is *affirmed.*