[Civ. No. 19217. Second Dist., Div. Two. Mar. 20, 1953.]

BARBARA W. KARRELL, Respondent, v. D. D. WATSON, as Real Estate Commissioner, etc., Appellant.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Appellant.

Albert Lee Stephens, Jr., and Ralph J. Geffen for Respondent.

MOORE, P. J.—The questions for decision are (1) whether the evidence before the administrative officer justified the revocation of respondent's license as a real estate broker and (2) whether the three-year statute of limitations began to run when the real estate commissioner discovered evidence of her crimes or at the time of her final conviction therefor.

During 1946 respondent was a licensed real estate broker operating under a variety of fictitious names. A part of her business consisted of selling lots to veterans. The parcels were evaluated by appraisers selected by the Administrator of Veterans Affairs at sums ranging from $1,500 to $1,750. In order to enrich herself, Miss Karrell employed schemes for obtaining from veterans prices in excess of those established by the administrator's appraisers. For illustration, she would sell a lot through an escrow at an office distant from the lending bank to a dummy for a sum not to exceed the appraised value. Thereupon, she would effect a sale to a veteran at a price in excess of the appraised value and cause the conveyance to be made by the falsely pretending purchaser. The excess sums over the appraised values were not reported to the office of the Veterans Administration. Such methods caused the lending bank to certify false statements to the last mentioned office which guaranteed loans solely by reason of its reliance upon the bank's certification.

Two years after such sales were made, respondent was indicted by a federal grand jury for concealing from the lending bank and the Veterans Administration the total prices demanded and received by her from the several veterans to whom she had made sales. She was duly convicted on six counts of the indictment and on February 25, 1949, judgment was entered by the district court whereby respondent was on each count sentenced to one year in prison and fined $1,000. However, execution of the sentences was suspended and the prisoner was placed on probation for five years on condition that she make full restitution of $2,750, the ag-

gregate of the sums taken from the six veterans, in such installments and at such times as the probation officer shall direct.

The judgment was based upon the fraud, dishonesty and deceit of respondent in her transactions with the veterans, the bank and the Veterans Administration, pursuant to section 1500 of the Servicemen's Readjustment Act. (38 U.S.C. §§ 697, 715.) That act denounces as a crime the offense of knowingly causing false certificates to be made to secure benefits for veterans under the Servicemen's Readjustment Act of 1944. Appeal was taken from the judgment which was amended and affirmed on April 24, 1950, and certiorari was denied by the United States Supreme Court on October 4, 1950.

Pursuant to the established practice of appellant, no disciplinary action against respondent was undertaken during the course of the criminal action against her. However, on August 25, 1950, an accusation was filed by the deputy real estate commissioner averring that Miss Karrell "has been and now is licensed by the Division of Real Estate of the Department of Investment . . . as a real estate broker . . . has violated the provisions of section 10177(b) and section 10177(f)*, Division 4, Business and Professions Code . . . in that on or about February 25, 1949 . . . respondent was convicted upon her plea of not guilty of [violating] sections 697 and 715, Title 38 of U.S.C. and Regulations issued thereunder . . ." Then follow the dates of the several crimes and punishments as set forth in the judgment and the suspension thereof with the terms of her probation. Reference to section 10177(b) having been stricken from the accusation, the matter was heard before a hearing officer on July 5, 1951, when respondent and five witnesses testified on her behalf. Such officer thereupon filed his "Proposed Decision" whereby he determined all the facts hereinbefore recited and found respondent guilty, adjudging that "any rights respondent Barbara W. Karrell may have to reinstate her license,

---

*Business and Professions Code, section 10177.

The commissioner may suspend or revoke the license of any real estate licensee, who within three years immediately preceding has done any of the following: . . .

(b) Been convicted of a felony or a crime involving moral turpitude, knowledge of which the commissioner did not have at the time of issuing the original real estate license to him . . .

(f) Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license.

as provided in Section 10201 of the Business and Professions Code . . be and the same are hereby revoked." The proposed decision having been adopted by the Real Estate Commissioner, it became the judgment of that officer on August 21, 1951.

Not content with such decision, on January 8, 1952, respondent filed in the superior court a petition for writ of mandate to test the validity of the judgment of the real estate commissioner alleging such officer had proceeded without or in excess of his jurisdiction in revoking respondent's license or right to renewal thereof; that all her criminal acts had been performed more than three years prior to the filing of the accusation against her. Such is the substance of her attack upon the administrative decision. It was there successful. The court found the facts as herein recited and that the commissioner's decision was "in excess of his jurisdiction, contrary to law, and not supported by any evidence whatsoever as no acts or conduct of the said petitioner were either charged or proved as having been committed during a three-year period prior to the bringing of said 'Accusation' on August 25, 1950''; and that there was no evidence that the petitioner within a three-year period prior to August 25, 1950, had acted or conducted herself in a manner which would have warranted the denial of her application for a real estate broker's license, or for a renewal thereof. Thereupon the court adjudged that respondent's conviction of misdemeanors within the three-year period "because of acts committed beyond said period is not the act or conduct of the broker contemplated by said section 10177(f)" and directed the issuance of a peremptory writ of mandate commanding the commissioner to set aside his decision against respondent within five days.

### Appeal from Writ

While the commissioner demands a reversal of the judgment, respondent seeks a dismissal of the appeal on the ground that the notice of appeal is from the "Peremptory Writ of Mandate" and that such notice does not comply with the *Rules on Appeal** and therefore is ineffective.

---

*Rules on Appeal. Rule 1. (a) An appeal from a judgment of a superior court *or from a particular part thereof* is taken by filing with the clerk of that court a notice of appeal therefrom. The notice shall be signed by the appellant or by his attorney and shall be sufficient if it states in substance that the appellant appeals from a specified judgment *or a particular part thereof*. A notice of appeal shall be liberally construed in favor of its sufficiency. (Italics ours.)

Dismissing an appeal is a serious matter. The right of a litigant to have the record of his cause reviewed by an appellate court is sacred. It was established by the Legislature pursuant to constitutional provision. It oftentimes means the difference between the preservation of an enviable estate on the one hand, and poverty and distress on the other; between freedom and servitude; between life and death. The privilege was incorporated into the corpus juris of the state as one more device for insuring the value of citizenship, for guaranteeing that no man's asserted rights will be abridged without a meticulous, microscopic study of the conduct of the offending court or administrative tribunal.

In the case at bar, the judgment was entered February 5, 1952. No other action was thereafter taken by the court prior to the filing of the notice of appeal. The judgment ordered a peremptory writ of mandate issue to the real estate commissioner directing him to reinstate Miss Karrell's license. The appeal is from that writ specified by the judgment, *or that part of the judgment.* Hence, the notice of appeal from the peremptory writ of mandate could reasonably have no significance other than an appeal from the judgment which directed the issuance of the writ. This conclusion is fortified by the contents of the notice which describes the peremptory writ of mandate as having ''passed upon the merits of the Petition for Writ of Mandate and the Return thereto . . .'' Also, the notice requested the county clerk to incorporate with the record, the findings and conclusions and the judgment, the petition for the writ, as well as both the alternative and peremptory writs. Inasmuch as the ''Judgment'' is the only document listed which ''passed upon the merits of the Petition for Writ of Mandate and the Return'' by what logic could the clerk, the adversary party or the appellate court have concluded otherwise than that the notice of appeal was intended to be an appeal from the judgment? Such a notice must be liberally construed. (Rule 1, *supra.*) In *Butler* v. *City & County of San Francisco,* 104 Cal.App.2d 126 [231 P.2d 75], the notice of appeal was from the judgment, the minute order directing judgment and the writ of mandate. The latter two items were excess baggage, served no purpose, and were therefore dismissed to keep the record straight. In *Kindig* v. *Palos Verdes Home Assn.,* 33 Cal.App.2d 349 [91 P.2d 645], the same mistake occurred and again the appeal from the writ and the minute order were dismissed. It follows that ap-

pellant's clerical error which was an ostensible appeal from the writ was in truth an appeal from the judgment. Hence, to dismiss it would be a denial of substantial justice.

## SECTION 10177(f) INTERPRETED

By section 10177 of the Business and Professions Code the real estate commissioner is authorized to ''suspend or revoke'' the license of any licensee ''who within three years immediately preceding'' has (a) procured a license by fraud; (b) been convicted of a felony or a crime involving moral turpitude of which the commissioner was ignorant when the license was issued; (c) knowingly aided in the circulation of a material, false statement; (d) wilfully disregarded specified provisions of the Code; (e) unlawfully used the term realtor; (f) *acted or conducted himself in a manner which would have warranted the denial of a license.* Now, respondent has emphasized, both in her petition for the writ and in her brief on appeal, that appellant exceeded his jurisdiction in making his order of revocation, since such proceeding was barred by section 10177.

The offenses committed by respondent in 1946 are not directly involved. It is the judgment of conviction by reason of those acts which is our present concern. Respondent urges the bar of the statute because more than three years elapsed from the date of the last offense until the filing of the accusation. Appellant contends that the Legislature impliedly included in subdivision (f) conviction of a crime which, he maintains, is such an *act* or *conduct* as authorizes the commissioner to revoke a broker's license. If the final judgment of conviction is not an *act* or *conduct* warranting disciplinary action and the crime itself is barred, then section 10177(f) does not fulfill the purpose clearly intended by the Legislature. Could the lawmakers have designed that, when a licensed broker runs counter to criminal statutes and is being processed by the courts, the commissioner should ignore the current judicial proceedings and file an accusation against the offender? Or did they intend for the commissioner to remain quiescent until the conviction should become final whereupon the disciplinary proceeding might be based upon the ''act'' or ''conduct'' of the broker in permitting a final judgment of conviction to be entered against him?

Acts regulating the conduct of real estate brokers have been operative since 1917. (Stats. 1917, ch. 748, § 9, p.

1584.) Under the 1917 act and its several amendments and successors it has been the practice for the commissioner to refuse a license to one who has been found guilty of, and sentenced for crime or who had a reputation for dishonesty or who had made a substantial misrepresentation or false promise. (Bus. & Prof. Code, § 10176.) Likewise, strict moral behavior in his relationship to those with whom he has to deal has been a requirement of every licensee in whatever field of activity. The Real Estate Law of 1919 required that every applicant for a broker's license must be "honest, truthful and of good reputation." That remained a part of the law until its inclusion in the Business and Professions Code. (§ 10150 et seq.) False representations have been deemed "dishonest dealings." (*Brecheen* v. *Riley*, 187 Cal. 121, 126 [200 P. 1042].) In 1927 the act was so amended as to revoke a license where the broker had been convicted of a felony subsequent to the issuance of the license. (Stats. 1927, ch. 350, § 1, p. 581.) In 1931 it was amended so that a license could be revoked for any other conduct, whether of the same or a different character than hereinabove specified, which constitutes fraud or dishonest dealing. (Stats. 1931, ch. 601, § 4, p. 1298.) In 1933 the act was amended by inserting the provision that the commissioner could revoke the license of a licensee who within three years immediately preceding "has been convicted of a felony" of which the commissioner had no knowledge "at the time of last issuing a license to such licensee." (Stats. 1933, ch. 691, § 7, p. 1775.) In 1937 the act added sections 8 and 12 which in 1943 were copied into the Business and Professions Code as parts of section 10177, subsections (b) and (f). (Stats. 1937, ch. 757, § 8, p. 2124; Stats. 1943, ch. 127, § 1, p. 847.) With no substantial alteration, the language currently appearing in subsections (b) and (f) of section 10177 of the Business and Professions Code was inserted in 1949. (Stats. 1949, ch. 836, § 6, p. 1572.)

With such consistency and uniformity of the acts and their amendments, all aiming to protect the public against persons who are reckless with the truth or unhindered in appropriating the moneys of their patrons, is it possible that the language of section 10177(f) is not effective to revoke the license of a broker who has been convicted of crimes involving moral turpitude occurring after receiving his license and who has thus "acted or conducted himself

in a manner which would have warranted the denial of his application for a real estate license?" Because section 10177(f) clearly authorizes the revocation of a license on any ground which would warrant the denial of an applicant's original application, a negative answer is unavoidable. (See *Payne* v. *Real Estate Comr.*, 93 Cal.App.2d 532, 537 [209 P.2d 419].) While subsection (b) of section 10177 had not been enacted in its present form when respondent committed her crimes, yet prior to that enactment, offenses of the grade of a misdemeanor were usually disciplined under other provisions than subsections (b) and (f). Since 1937 subsection (f) has been available for disciplinary action for dishonesty or a bad reputation.

From the foregoing outline of the Real Estate Act and its evolutionary changes, it must be apparent that the contemporaneous construction of section 10177(f) given by courts and the commissioner has served to establish its meaning. (*Riley* v. *Forbes*, 193 Cal. 740, 745 [227 P. 768].) ▮ By allowing a conviction for a crime involving moral turpitude to become final, respondent "conducted herself in a manner which would have warranted the denial of her application for a real estate license." In other words, by the final judgment she acquired a reputation for dishonesty which would have necessitated the denial of her application for a license. With the exact dates of the crimes, the revocation of the license is not directly concerned. Only the final judgment of conviction is here involved. The charges against her have passed under the scrutiny of both trial and appellate courts. The final judgment establishes that respondent is one whose established conduct would require a rejection of her application for a license as a real estate broker.

If section 10177(f) does not apply to her, to what section of the code should the commissioner have resorted to remove her from his rolls? Or should he have declared the law impotent and the convicted broker restored to all the rights of the innocent and the honest? After that section had been used for over 15 years for disciplining misdemeanants, how can it now be termed inapplicable? Section 10177(b) cannot be used for the reason that at the time of her misdemeanors, subsection (b) related only to brokers convicted of felonies. Would one be so rash as to declare that notwithstanding the constant vigilance of the Legislature and the assiduous enforcement of the act, as evidenced by court decisions, the commissioner is powerless to remove a faith-

less broker because he has deferred action until the affirmance of the judgment of conviction? A fair appraisal of subsection (f) forbids an affirmative reply. For any person to have suffered a final judgment for such grave offenses as those embodied in the indictment against respondent would require any commissioner to reject the application of such person for a license. If he must under the circumstances deny a license, then under subsection (f) it was the duty of appellant to revoke the license of respondent. In view of the provisions (§§ 10150-10152) for rejecting applications, it is a reasonable construction that section 10177(f) was intended to authorize the revocation of a license where the criminal acts of the licensee have merged in a judgment convicting the broker of offenses involving moral turpitude committed prior to the three-year period next preceding the filing of the accusation.

### THE STATUTE OF LIMITATIONS TOLLED

Respondent seeks to escape the discipline ordained by statute to be applied to dishonest brokers on the ground that her crimes occurred more than three years before she was accused. A conclusive, negative answer to such contention is found in the decisions of this state. In *Archer* v. *Harvey,* 164 Cal. 274 [128 P. 410], an attorney sued the distributee of his deceased client for specific performance of an agreement to convey an interest in a water right for which he was to render legal services in connection with appealing a case involving the water rights to the Supreme Court. It was held that the statute of limitations was suspended during the time preceding final decision in the water case. (See, also, *Archer* v. *Edwards,* 19 Cal.App.2d 253, 256 [2] [65 P.2d 115]; *Frink* v. *Hoke,* 35 Ore. 17 [56 P. 1093, 1095].) But what is of paramount importance as a precedent for guidance is the series of definite holdings of the courts of California that disciplinary proceedings are suspended and held in abeyance until the criminal action has run the gamut of the criminal courts. (*In re Riccardi,* 182 Cal. 675 [189 P. 694]; *In re O'Connell,* 182 Cal. 786 [189 P. 700].) In *Payne* v. *Real Estate Comr.,* 93 Cal.App.2d 532, 537 [209 P.2d 419], the court observed that had the commissioner acted prior to final judgment in the criminal action, the licensee would have been deprived of his right to carry on his usual business until his acquittal or until his final con-

viction; whereas it might have resulted that a revocation was not justifiable.

The judgment is reversed with instructions to enter judgment in favor of appellant, denying a peremptory writ.

Fox, J., concurred.

McComb, J., dissented.

A petition for a rehearing was denied April 15, 1953, and the following opinion was then rendered:

THE COURT.—On petition for rehearing respondent's main argument is that the facts of *Manning* v. *Watson,* 108 Cal.App.2d 705 [239 P.2d 688], are not distinguishable from those at bar. The Manning accusation alleged only a conviction of certain sections of the United States Code, while the commissioner attempted to prove specific acts of a fraudulent and dishonest character.

In the instant case the accusation contained the essential allegations absent from the Manning complaint, to wit, the nature and elements of the deeds for which Miss Karrell had been convicted—a crime which patently constituted dishonesty, untruthfulness and moral turpitude, and stigmatized respondent with a bad reputation. The theory of the commissioner herein was that it was necessary to prove only the conviction of the crime and that its nature involved dishonest or fraudulent acts. The cases, therefore, are not in conflict.

It is to be observed, also, that Manning made restitution of his perfidious profits and thereby displayed his respect for the law, if not a true penitence for his crimes.

McComb, J., dissents.

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.