Barbara **KARRELL**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15038.

United States Court of Appeals Ninth Circuit.

Aug. 8, 1957.

---

Ernest J. Zack, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Peter Hughes, Louis Lee Abbott, Thomas H. Ludlow, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before LEMMON, CHAMBERS and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

On January 19, 1949, appellant Karrell was found guilty by a jury in the United States District Court for the Southern District of California on eight counts of a 17 count indictment, the eight counts being all that survived to be submitted to the jury. Before sentence the court found two of the eight counts supported by insufficient proof.

Miss Karrell, as a real estate agent, had been involved in some financing of veterans of World War II pursuant to the provisions of the Servicemen's Readjustment Act of 1944 [1] at the Santa Monica branch of the Bank of America. All of the counts involved a pattern. All charges were identical except as to names of veterans and appraisers and dates and amounts. The charges may be fully illustrated by Count Four:

"Count Four
"(38 U.S.C. 697, 715)

"On or about October 22, 1946, in Los Angeles County, California, within the Central Division of the Southern District of California, defendant Barbara Karrell did knowingly cause to be made a false certificate and paper concerning a claim for benefits under the Servicemen's Readjustment Act of 1944 (38 U.S.C. Sections 694, et seq.), in that defendant did cause the Bank of America, National Trust and Savings Association, 1358 Third Street, Santa Monica, California Branch to certify in a Home Loan Report presented to the United States Veterans Administration that the price paid by Philip Bentivegna, a veteran of World War II, for the purchase of a residential lot at 4907 Beloit Avenue, Los Angeles, California, as to which a loan guarantee was sought from the Government of the United States, was $1,550.00 and that the price paid by said veteran for such property did not exceed the reasonable value thereof of $1,650.00 as determined by proper appraisal dated July 24, 1946, made by Robert E. Gilliland, an appraiser designated by the Administrator of Veterans' Affairs; whereas, as defendant well knew and caused to be concealed

1. 58 Stat. 284, 38 U.S.C.A. § 693 et seq.

from said bank and Veterans Administration, the total price demanded and received by the defendant from said veteran for such property was $2,150.00 and did exceed the reasonable value thereof as determined by a proper appraisal."

After an appeal [2] eliminated a requirement that the defendant make restitution to veterans included in the counts which had been dismissed, the sentence eventuated as follows:

1. Imprisonment for one year concurrently on each of six counts. Suspended. Placed on probation for five years.

2. Total fines of $2,700.

3. Restitution of varying amounts to the six veterans named as bank borrowers in the six counts.

The probation period has now expired. She has paid nothing on account of the fines and has made no restitution. Apparently she cannot make the payments unless she can get her real estate license back.[3] To do that she must get rid of the record of her conviction hereinabove described. And if she could dispose of the record she wouldn't need to pay the fine and perhaps wouldn't have to make restitution.

■ Title 38 of the U.S.C.A. is concerned with "Pensions, Bonuses, and Veterans' Relief." Sections 701 to 721 of the title have their roots in pre-World War II legislation. Section 715, (48 Stat. 11, § 715) as it has stood since 1933 with reference to the older benefits for veterans, reads as follows:

"Any person who shall knowingly make or cause to be made, or conspire, combine, aid, or assist in, agree to, arrange for, or in any wise procure the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, or writing purporting to be such, concerning any claim for benefits under sections 701, 702, 703, 704, 705, 706, 707–710, 712–715, 717, 718, 720, and 721 of this title, shall forfeit all rights, claims, and benefits under such sections, and, in addition to any and all other penalties, imposed by law, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both."

The Servicemen's Readjustment Act of 1944 is essentially found in §§ 693–697g of Title 38. Under those sections the United States government for the first time undertook on a large scale to guarantee private loans of veterans to buy a farm, to buy or expand a business, and to buy or build a house. In such bounty, abuses would soon be boring. Anticipating this, Congress provided for the eventualities, not by penal language self sufficient, but by incorporating § 715 into the Servicemen's Act of 1944 by reference § 697(a), reading as follows:

"Except as otherwise provided in this chapter, the administrative, definitive, and *penal provisions* under sections 701, 702, 703, 704, 705, 706, 707–710, *712–715*, 717, 718, 720, and 721 of this title, and the provisions of sections 450, 451, 454a and 556a of this title, *shall be for application under this chapter.* For the purpose of carrying out any of the provisions of sections 701, 702, 703, 704, 705, 706, 707–710, 712–715, 717, 718, 720, and 721 of this title, and this chapter, the Administrator shall have authority to accept uncompensated services, and to enter into contracts or agreements with private or public agencies, or persons, for necessary services, including personal services, as he may deem practicable." (Emphasis supplied) (Also, see footnote 6, post.)

Miss Karrell contends that so far as she is concerned Congress led itself into

2. Karrell v. United States, 9 Cir., 181 F. 2d 981.

3. Karrell v. Watson, 116 Cal.App.2d 769, 254 P.2d 651, 255 P.2d 464.

a cul-de-sac. Her reasoning is literal, cube rooted. It runs that there are no offenses under the 1944 Act because:

1. § 715, per se, applies to offenses not under the 1944 Act, but to offenses involving the older benefits under the "700" series of sections.

2. Offenses against the "700" series of sections couldn't possibly be committed with respect to the benefits of 1944 in the §§ 693–697 series, but that is all that Congress has done by § 697(a). So § 697(a) actually means nothing.

Appellant states it this way:

"Statute 'X' makes Act 'A' a crime. Statute 'Y' incorporates by reference statute 'X'. She has done Act 'B'. Ergo, no crime."

We give Miss Karrell's counsel "A" for ingenuity, but we cannot agree with him.

█ It is true that there are no federal common law crimes. Federal crimes must be found in the federal statutes. The statutes are to be strictly construed, but not to the point of overstraining. We think the natural meaning of § 697 (a), when it picks up § 715, is that § 715 is applicable under 697(a) to the same abuses on § 693–697 benefits provisions as well as to the "700" series of benefits.[4]

In our judgment it takes four or five readings to come up with the construction contended for by Miss Karrell.[5] We think § 697 gave her notice by the reference to § 715 that she had offended the federal statute with reference to 1944 benefits if she did the things with which she has been charged and convicted.[6]

Miss Karrell's conviction has been heretofore affirmed in this court as above indicated. In the area of her present ground, the decision in her former appeal followed Young v. United States, 9 Cir., 178 F.2d 78. It is now contended that the decision in Young rather begs the

---

4. Specifically here to making a false certificate, statement or paper concerning a claim for benefits, presumably for a loan guaranty under § 694.

5. Appellant contends that an inescapable point is that language cannot be read out of a section; that a court cannot read out of § 697(a) adopting § 715 making a false certificate as to one of the § 700 benefits. But laws are words; sentences and paragraphs, chapters, titles and their meaning must be taken from the whole—and not from over construing. Never to be forgotten is that Congress was trying to do something. The law specifying a crime must give notice of the crime. On first reading, the natural reaction of a person would be to think that under § 697(a) making a false certificate is a crime.

6. The hodge podge of veterans legislation then existing was rewritten in 1933 as H.R. 2820, 48 Stat. 8. Section 15 thereof reads as follows:

"Any person who shall knowingly make or cause to be made, or conspire, combine, aid, or assist in, agree to, arrange for, or in any wise procure the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, or writing purporting to be such, concerning any claim for benefits under this title, shall forfeit all rights, claims, and benefits under this title, and, in addition to any and all other penalties imposed by law, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both."

The foregoing is identical with 38 U.S.C.A. § 715, as it appears today except the code lists sections of the title rather than saying "under this title."

The Servicemen's Act of 1944, Sec. 1500, 58 Stat. 300, picks up the 1933 penal provisions in the following language:

"Except as otherwise provided in this Act, the administrative, definitive, and penal provisions under Public, Numbered 2, Seventy-third Congress, as amended, and the provisions of Public, Numbered 262, Seventy-fourth Congress, as amended (38 U.S.C. 450, 451, 454a and 556a), shall be for application under this Act. For the purpose of carrying out any of the provisions of Public, Numbered 2, as amended, and this Act, the Administrator shall have authority to accept uncompensated services, and to enter into contracts or agreements with private or public agencies, or persons, for necessary services, including personal services, as he may deem practicable."

If one checks through the official enactments there is less to appellant's contention than there is if one stays in the four corners of the code.

question she now presents and is unsatisfactory.

Miss Karrell's present appeal, contrasted with the briefs in Young and in her first appeal, presents the point more sharply, perhaps because this time the conviction is attacked on one point instead of on several. But we are of the opinion from an examination of the earlier appeals that her present point was actually presented in both, more extensively of course in the first case, the Young appeal.

Therefore, we announce that Miss Karrell's first appeal decided her present point. And, we agree with that determination.

But how does this case get back here a second time? Appellant has attempted to come in through the back door of § 2255, Title 28 of the United States Code. She commenced the present proceeding in the district court before her probation expired to vacate her conviction.[7] The district court held that this court's decision, 181 F.2d 981, settled the whole matter, and the point was not open to reconsideration. This appeal followed.

This attempt under § 2255 is beset with difficulties:

1. Was there sufficient custody in the probation officer of Miss Karrell to test the question?[8]

2. Is it the type of question suitable for § 2255 review?

3. The probation period having expired during the pendency of this § 2255 proceeding, isn't the whole matter moot in the federal courts?

■ Appellant thinks that these points are not good, but says if they are, she is entitled to the beneficences of the writ of coram nobis; thus renaming her § 2255 proceeding. Coram nobis involves factual matters outside the prior record and not the simple testing of an indictment against a statute.

■ We doubt if in this proceeding the trial court had any right to grant affirmative relief. The point has been already adjudicated. Also, we believe the question has become moot.

Perhaps, better appellate practice would have been to consider the procedural points first. Herein we have chosen to announce first that we are certain the point of the statutory construction of § 697(a) has been here before in Young's case and also, in Miss Karrell's proper earlier appeal—and that we agree with those determinations.

The case should not be taken as a precedent approving the practice attempted here. On that, our decision is reserved.

Counsel for appellant, obviously a busy and skilled lawyer, has taken this case without remuneration in an effort to help one he believes deserving of his help. That of course is true to his profession. If we cannot agree with him, we can commend him. We do so now. His work was splendid.

Appeal dismissed.

7. The district court's ruling was made on March 22, 1956, the last day of five year period of probation.

8. Strand v. Schmittroth, 9 Cir., —— F. 2d ——.