[Civ. No. 18806.   Second Dist., Div. Two.   July 11, 1952.]

JOSEPH MORRIS MARKS, Appellant, v. D. D. WATSON, as Real Estate Commissioner, etc., Respondent.

Macbeth & Ford, Norman Macbeth and John E. Howard for Appellant.

Edmund G. Brown, Attorney General and Lee B. Stanton, Deputy Attorney General, for Respondent.

FOX, J.—This is a mandamus proceeding to review an administrative order of the Real Estate Commissioner revoking plaintiff's license to act as a real estate broker. From an adverse judgment plaintiff appeals.

In September, 1948, one Rowley owned a motel in Santa Monica. Marks had learned from others that Rowley had listed the motel for sale. On September 24 Marks telephoned Rowley requesting a listing of the property. Rowley told him it was already on an "open listing" with several other real estate brokers. After some discussion Rowley agreed to give Marks also an open listing. Following this telephonic conversation Marks took two Los Angeles Realty Board's printed forms of "exclusive listing" for sale of realty and altered them by printing in his own handwriting at the top, the words "Open Listing" and by crossing out the word "exclusive" from the body of the instruments where it twice appeared. However, the language appearing later in the listing whereby the seller agreed to pay the agent a five per cent commission whether the property was sold by the agent or someone else including the owner was not stricken. These printed forms, thus altered, were then mailed to Rowley, accompanied by a note from Marks reading in part: "Please sign open listing, both copies enclosed. Return original. . . . " Rowley marked out the provision requiring a termite report, signed the listing and returned it to Marks. Thereafter, when the motel had been sold by another broker, Marks, without making any demand for payment of a commission, filed an action for the collection thereof. The first knowledge Rowley had of Marks' claim was the service of a writ of attachment. Marks, however, was unsuccessful in his suit in both the trial court and on

appeal. (See *Marks* v. *Rowley*, 102 Cal.App.2d 619 [228 P.2d 29].) Prior to the Rowley transaction Marks had made the same altered listing agreement with a Mrs. Bremberg, had sued her for a commission under similar circumstances, and had recovered judgment therefor in the Santa Monica Municipal Court.

The court found that an "open listing" has, by usage and custom between the general public and the members of the real estate business, been accepted as a listing wherein the commission is considered to be earned by the broker who first finds a buyer who meets the terms of the listing or whose offer is accepted by the seller, and that there is no obligation on the part of the seller to notify any of the brokers of the sale of the property and that the seller is not obligated to pay a commission to any broker except the broker who secured the buyer for the property. Marks' testimony indicates he understood the term "open listing" in accordance with this finding.

Marks testified he placed the words "Open Listing" on the forms so that the other brokers could sell the motel after contacting him, and they would be entitled to half the commission. However, Marks sued for the full five per cent, not for just half of it. Marks knew when he procured the listing several other brokers were making efforts to sell the property.

An accusation against Marks based on the Rowley transaction was signed and filed by a Deputy Real Estate Commissioner. Disciplinary action was requested against Marks on the grounds that in securing and attempting to enforce a listing agreement for the sale of certain real estate he (1) made substantial misrepresentations in violation of section 10176(a) of the Business and Professions Code; (2) conducted himself in a manner which constituted fraud and dishonest dealings contrary to the provisions of subdivision (i) of that section; and (3) violated section 10177(f) of the Business and Professions Code by acting and conducting himself in a manner which would have warranted the denial of his application for a license.

After a hearing the Real Estate Commissioner found the allegations of the accusation to be true, and revoked Marks' license. He sought review by the superior court under section 1094.5 of the Code of Civil Procedure. After a review of the administrative record the court sustained the action of the commissioner.

Plaintiff's first contention is that his conduct was not within the purview of the Real Estate Act because the claimed fraud and dishonest dealing occurred prior to the creation of any broker relationship between the parties. This position is not well taken. The representations and conduct on the part of plaintiff in securing Rowley's signature to the listing is only the first part of the fraud. The attempt to consummate it occurred after the "open listing" had been signed by the seller through the institution by Marks of court action to enforce it as an exclusive listing agreement. The attempted fraudulent enforcement of such a listing may constitute grounds for revocation of a realtor's license. (See *Castleman* v. *Scudder,* 81 Cal.App.2d 737 [185 P.2d 35].)

It is difficult to conceive of an action which comes more within the purview of the Real Estate Act than does a lawsuit for the collection of a real estate commission. In fact, if Marks had not been a licensed real estate broker, he could not even have maintained the action. (*Sheble* v. *Turner,* 46 Cal.App.2d 762 [117 P.2d 23].)

Plaintiff's second contention is that the findings of fact fail to show more than a possible fraudulent intent. The conduct of Marks goes further than this. He not only negotiated by telephone for an "open listing" with Rowley well knowing what that term meant but then purposely changed parts of an exclusive listing form, representing it in his note to Rowley to be an open listing while he fully intended to enforce it as an exclusive listing in the event someone else sold the property. He later tried to carry out this fraudulent intent by court action against Rowley as he previously had done against Mrs. Bremberg. This constituted the overt act and resulted in damage to Rowley since it was necessary for him to employ counsel to handle his case both in the trial court and on appeal.

Plaintiff's third contention is that as a matter of law there was no fraud. In support of this proposition he argues that the case of *Marks* v. *Rowley, supra,* "in legal effect, destroys the possibility of fraud upon the part of Marks." In that action Marks was simply trying to enforce the contract and collect the commission. The question of fraud was not in issue. The court merely held that the written portion of the "Open Listing" contract should prevail over the printed portion. (P. 621.)

The fraud was in the false representation by Marks that the agreement was an open listing and that he only

intended to enforce it as such, and his subsequent action in attempting to enforce it as an exclusive listing in violation of the prior representations as to its character which he had made to Rowley both orally and in writing. ▇ The fact that Rowley could have frustrated Marks' scheme by striking out the printed matter in the agreement which is repugnant to the accepted definition of an open listing does not lessen the culpability of Marks' conduct nor does it relieve him from disciplinary action for his attempt to consummate his fraudulent plan. He cannot excuse his violation of the cited sections of the Business and Professions Code by charging his client with negligence.

▇ Plaintiff's final point is that the severity of the punishment establishes abuse of discretion. In support of this plea Marks argues he "was found guilty of questionable conduct that in fact hurt no one," and that the "degree of harm to Rowley should be of controlling importance to the punishment and revocation would seem disproportionate for an act harmful to no one." Plaintiff clearly misconceives the detrimental effect of his conduct in this transaction on Rowley. It was not only necessary for Rowley to employ an attorney to represent him in court and pay for such services but he also had an attachment levied on his property, and undoubtedly was required to spend considerable time in connection with the various phases of this litigation. It therefore cannot properly be said that Marks' conduct "hurt no one."

▇ The "degree of harm" to the victim is not a matter of controlling importance in fixing the penalty in disciplinary proceedings. It is simply one of the facts to be taken into consideration. ▇ The basic reason for disciplinary action in matters of this kind is the protection of the public against unethical and dishonest conduct on the part of those engaged in the real estate business. ▇ In view of this purpose we cannot say that the revocation of plaintiff's license establishes, as a matter of law, an abuse of discretion on the part of the Real Estate Commissioner.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 4, 1952.