[Civ. No. 18864. First Dist., Div. One. Jan. 9, 1961.]

VIOLA A. PRESTON, Appellant, v. MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

A. Don Duncan for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Albert W. Harris, Jr., Deputy Attorneys General, for Respondent.

TOBRINER, J.—We face the single question, here, whether an appellant is entitled to a reporter's transcript at the expense of the City and County of San Francisco on an appeal from a judgment of conviction for a misdemeanor in the municipal court. As we shall explain, we do not concur in appellant's contention that the statutes and decisions require that transcripts be furnished in all misdemeanor cases. On the other hand, since appellant has filed an affidavit *in forma pauperis* and the superior court apparently has accepted her contention that she could not safely prosecute the appeal without the transcript, we believe that under these special circumstances she would, upon proof of such facts, be entitled to the transcript at the expense of the City and County of San Francisco.

Upon conviction for petty theft in a criminal action in the Municipal Court of the City and County of San Francisco, appellant was granted probation upon condition of a suspended sentence to the county jail for six months, restitution of $200 and payment of a fine of $100. Appellant appealed, giving notice in her statement on appeal that she intended to file a reporter's transcript of the proceedings, "to be prepared at the expense of the City and County of San Francisco." She filed a "Notice of Motion for Order to Reporter to Prepare Transcript at Expense of City and County of San Francisco, supported by Affidavit of Defendant in Forma Pauperis." Respondent municipal court denied the motion.

Appellant then petitioned the Superior Court of the City and County of San Francisco for a writ of mandate commanding the municipal court, the judge, and the clerk, to furnish to appellant, for use on appeal, a reporter's transcript of the trial and related proceedings, "at the expense of the City and County of San Francisco, and without expense to appellant. . . ." The petition alleged that the evidence at the trial involved testimony by various witnesses about many checks and receipts; that it would be impossible for appellant's counsel to compose a statement on appeal based on his memory or notes; that appellant could not safely proceed with her appeal without the assistance of a reporter's transcript; that appellant was wholly without funds to pay for a transcript.

The superior court sustained, without leave to amend, respondents' demurrer to the petition, and denied the writ of peremptory mandate. In its judgment the superior court stated that it found appellant's allegations in the petition to be true, but that "it is not true" that appellant "is entitled

to the preparation of a Reporter's Transcript to implement her said appeal . . . at the expense of the City and County of San Francisco. . . .''

We shall first consider appellant's contention that she is entitled to the transcript under the statutes of California; thereafter we shall analyze her claim to it as a pauper and as afforded under the state and federal Constitutions.

■ The statutory provisions which grant a publicly supplied transcript to criminal defendants in the superior court do not apply to such defendants in the municipal court. The opinion of Justice White in *Hidalgo* v. *Municipal Court* (1954), 129 Cal.App.2d 244 [277 P.2d 36], disposes of the exact issue before us, explaining that while "there is no doubt" of the right of one convicted of a felony "to a transcript of the evidence at the expense of the state" (p. 245), section 274c of the Code of Civil Procedure in effect provides, as to municipal courts, that the presence of the reporter "is dependent upon the discretion of the judge. . . .'' (P. 246.) If the judge orders a reporter, the matter of transcription depends upon the parties. Government Code section 69952 indicates "a legislative intent to make such payment a charge against the county only in cases where the court specifically so directs. . . .'' (P. 246.)

*People* v. *Smith* (1949), 34 Cal.2d 449 [211 P.2d 561], sets out the statutory history of the sections. As of the date of that case section 274 of the Code of Civil Procedure (now the above mentioned Gov. Code, § 69952) provided: "In criminal cases in which the court *specifically so directs* the fee for reporting and for a transcript ordered by the court to be made must be paid out of the county treasury on the order of the court. . . .'' (Emphasis added.) In 1909 the Legislature added section 1247 to the Penal Code providing: "Upon any appeal being taken from any judgment or order of the *superior court* . . . in any criminal proceedings, . . . the defendant or the district attorney when the people appeal, may within two days . . . designate what portion of the phonographic reporter's notes it will be necessary to have transcribed to fairly present the points relied upon, and ask the court to make an order for the transcription thereof. . . . If the court fails to make the order within one day after the application is presented, an order *shall be deemed to be given and made* for the portion of the notes requested in the application." (Stats. 1909, ch. 710, p. 1084; emphasis added.) The Legislature in

1911 amended section 1247 (Stats. 1911, ch. 382, p. 692) which, again referring to "an appeal being taken from any judgment or order of the *superior* court, . . . in any criminal action or proceeding" (p. 692; emphasis added) provided: "If the court fails to make the order within two days after the application is filed, the notes requested in the application shall be transcribed without such order" (p. 693). Smith held that Penal Code section 1247 and the amendments setting out "the requirement for a court order within the specified time and in the absence thereof the mandate that the reporter make the transcription as requested, operated to provide a transcript at state expense pursuant to section 274 of the Code of Civil Procedure." (*People* v. *Smith, supra,* 34 Cal.2d 449, 452.)

Respondents properly point out that "[n]o comparable legislation has been enacted with respect to municipal courts." As a consequence, the decisions in *People* v. *Smith, supra,* 34 Cal.2d 449; *In re Paiva* (1948), 31 Cal.2d 503 [190 P.2d 604]; and *Gross* v. *Superior Court* (1954), 42 Cal.2d 816 [270 P.2d 1025], which involve superior courts, do not control.

To overcome Hidalgo and the statutory history appellant apparently urges three positions which we now discuss. As we shall point out, we do not find them meritorious.

Appellant first presents a labored argument that Hidalgo was wrongly decided because the language of section 274c of the Code of Civil Procedure and section 69952 of the Government Code, the successor of section 274, Code of Civil Procedure, were substantially similar and must be treated *in pari materia*; that, when Smith was decided, section 274, Code of Civil Procedure, relating to superior courts, provided that in criminal cases " 'in which the court specifically so directs' " the fee " 'must be paid out of the county treasury' "; that the language of Government Code section 69952, as of the date of Hidalgo, and upon which it rests, makes the same provision. Hidalgo, then, on the basis of Smith should have treated the problem in the same manner and allowed the transcript free to the defendant.

The argument overlooks the qualifying language of the amendments to section 1247 of the Penal Code, set out *supra,* which applied specifically to superior courts. The purpose of the amendments, according to Smith, was probably to correct the situation discussed in *Richards* v. *Superior Court* (1904), 145 Cal. 38 [78 P. 244], a case which held that section 274, Code of Civil Procedure, unadorned by section 1247 of the Penal Code, did not provide for furnishing transcripts at

public expense. Hence the presence of section 1247 of the Penal Code, plus the additional and clarifying enactments, destroys appellant's attempt to demolish Hidalgo because it did not follow Smith.

Pointing out that Code of Civil Procedure section 274c was amended in 1953 (Stats. 1953, ch. 206, § 6, p. 1340) to include a reference to section 69952 of the Government Code, appellant argues, as a second position, that the former section *thereby includes* the language of Code of Civil Procedure section 274 upon which the cases of Paiva, Smith and Gross rested. Whatever significance the argument may have, it disintegrates in the *removal* of the reference to Government Code section 69952 by Statutes 1955, chapter 1424, section 1, page 2592. Appellant's argument that the Legislature dropped the reference to Government Code section 69952 because; in 1951, it had enacted language in Penal Code section 690 which covered the subject, cannot stand. The generalized language of the Penal Code section, providing that "criminal actions and proceedings in all courts" be the same, does not refer to transcripts or provide for payment for them.

Thirdly, appellant relies upon Government Code section 74514 because it in turn refers back to Government Code section 69952. Thus Government Code section 74514 provides: "In all cases where by law, the court may direct the payment of transcription fees out of the city and county treasury, such fees shall, upon order of the court, be paid from the general fund including fees for transcription of testimony and proceedings in criminal cases as provided in Sections 69947 to 69953, inclusive; which shall be paid from the city and county treasury." Government Code section 69952 provides that the furnishing of free transcripts is entirely discretionary; hence the argument does no more than again present the same proposition which we have discussed *supra.*

We conclude that the ruling of Hidalgo disposes of appellant's contention that defendants in criminal cases in municipal courts are automatically entitled to free transcripts on appeal. On the other hand, appellant presents a different case from that adjudicated in Hidalgo in that she has filed her affidavit *in forma pauperis* and the trial court has accepted her allegation that she cannot prosecute her appeal without the use of the transcript. Since, if she had possessed adequate funds, appellant could have purchased the transcript,

which was actually taken at her trial, we believe, she would, upon proof of these special circumstances, be entitled to the transcript at the county's expense under the principle of the United States Supreme Court decision of *Griffin* v. *Illinois* (1956), 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055], a case decided after the ruling in Hidalgo.

 Initially we must discuss the question whether appellant has properly raised the constitutional point. She did not refer to Griffin until after the attorney general commendably called attention to that case in his brief. In her petition for a writ of mandate, however, appellant alleges her "clear legal right" to the transcript "for use in connection with her pending appeals . . . under the laws of this State, and the Rules on Appeal. . . ." Then in her "Points and Authorities Supporting Petition for Writ" she states: "It is to be noted that the aforesaid three rulings of the Supreme Court [Paiva, Smith, Gross] are *general*, as to be applied to *all* defendants, in criminal cases, misdemeanors or felonies. Any other construction would be denying the equal protection of the laws, in direct violation of the Federal and State Constitutions."

Appellant thus raises a constitutional issue regarding the construction of the statutes and more especially the application of equal protection to all defendants. She contends that *all* defendants, whether convicted of felonies or misdemeanors, are entitled to transcripts. Necessarily within the group of all defendants there must be included the more restricted class of all indigent defendants. Consequently, appellant indirectly raises the problem involved in Griffin. A party questioning the constitutionality of a statute, or its application, must raise the constitutional issue at the earliest opportunity *(Jenner* v. *City Council* (1958), 164 Cal.App.2d 490, 498 [331 P.2d 176]); appellant, here, submitted the issue at the time of her petition for a writ of mandate, her first opportunity after the denial of her request for a transcript at county expense.

 Furthermore, as *Egan* v. *Teets* (9th Cir., 1957), 251 F.2d 571, states, ". . . a constitutional question may be raised at any time if the matter appears on the face of the record, or if it is of such nature that it could not have been raised before." (P. 576.) In the instant case the constitutional issue appears on the face of the record, specifically in appellant's allegations of poverty and the need for a transcript in order to obtain an adequate appeal.

We now turn to the application of Griffin. In that case defendant and his codefendant, Crenshaw, convicted and sentenced for armed robbery, moved in the Criminal Court of Cook County, Illinois, for a free stenographic transcript of their trial upon the ground they were " 'poor persons with no means of paying the necessary fees to acquire the Transcript and Court Records needed to prosecute an appeal. . . .' " (P. 13.) Although Illinois provides that writs of error in all criminal cases are writs of right (Ill. Rev. Stat., 1955, ch. 38, § 769.1), an appellant, to review errors at the trial, must provide a transcript for the basis of his bill of exceptions (Ill. Rev. Stat., 1955, ch. 110, § 101.65 [Supreme Court Rule 65]). Appellant must pay for the transcript unless he falls within one of three exceptions: (1) a sentence to death (Ill. Rev. Stat., 1955, ch. 38, § 769a); (2) an application for a writ of error to correct an error appearing in the common law "mandatory record" (consisting merely of indictment, arraignment, plea, verdict, and sentence); or (3) an application to correct a constitutional error (federal or state) in the proceedings which resulted in his conviction (Post-Conviction Hearing Act of 1949, Ill. Rev. Stat. 1955, ch. 38, §§ 826-832). The criminal court denied Griffin's motion for a free transcript.

Griffin's next attempt to obtain a review of the lower court's ruling under the Illinois Post-Conviction Hearing Act met with similar defeat, as, indeed, did his appeal to the Illinois Supreme Court. His application for certiorari to the United States Supreme Court, however, procured a vacation of the Illinois judgment by a five to four majority. Justice Black wrote the majority opinion; Justice Frankfurter, concurring in the judgment, wrote a separate opinion.

Justice Black points out: "Counsel for Illinois concedes that these petitioners needed a transcript in order to get adequate appellate review of their alleged trial errors. . . . We must therefore assume for purposes of this decision that errors were committed in the trial which would merit reversal, but that the petitioners could not get appellate review of those errors solely because they were too poor to buy a stenographic transcript." (P. 16.) Such discrimination against an indigent cannot withstand the force of the due process and equal protection clauses. "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, e. g., *McKane* v. *Durston,* 153

U.S. 684, 687-688 [14 S.Ct. 913, 38 L.Ed. 867]. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. . . . Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations.'' (P. 18.) Succinctly the justice sums up: ''There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.'' (P. 19.)

Griffin's general impact upon our situation is clear. We need not concern ourselves with the debated issue as to whether the Supreme Court invoked the due process as well as the equal protection clause in that case (see the excellent discussion in Willcox and Bloustein, *The Griffin Case—Poverty and the Fourteenth Amendment* (1957), 43 Cornell L. Q. 1); the requirement for equal protection in the federal Constitution and the prohibition against special privileges in the state Constitution (art. I, § 21) are sufficient. We recognize, however, two differences between the instant situation and the Griffin case that might serve to negate the application of the latter decision: first, that the instant conviction involved a misdemeanor and not a felony, and, second, that the ruling does not apply if appellant could have pursued the appeal by way of a bill of exceptions without the need of a transcript. We turn to a discussion of each of these points.

We do not believe the principle of Griffin applies only to felony convictions. The principle cannot be cut to the Procrustean bed of the penalty. It is true that Justice Harlan, to illustrate the claimed horrendous sweep of the decision, poses the question, ''Thus if requiring defendants in felony cases to pay for a transcript constitutes a discriminatory denial to indigents of the right of appeal available to others, why is it not a similar denial in misdemeanor cases or, for that matter, civil cases?'' (P. 35.) But we do not touch civil cases here, and we may properly differentiate between loss of property in civil actions and loss of liberty by incarceration for the commission of crime. And the argument that we should distinguish between felonies and misdemeanors dissolves in the common formula of the penalty: both types of crime carry the sanction of fine and imprisonment. That the imprisonment may be longer for the felony than for the misdemeanor does

not detract from the fact that both sanctions involve loss of liberty. While there are many obvious differences between the misdemeanor and the felony, and the former, of course, imposes a lighter penalty, we do not believe the difference justifies the mutilation of the right of appeal by deprivation of the transcript.

Nor do we believe the force of Griffin can be avoided upon the ground that it recognizes a bystander's bill of exceptions as constitutionally adequate and that California law provides a substantially equivalent procedure. In this respect respondents rely upon this language of Griffin: "We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases. [Footnote omitted.]" (P. 20.) Recognizing that California does provide for free transcripts in felony cases but does not do so in misdemeanor cases, respondents argue California provides for an alternative appeal procedure from municipal courts by way of a settled statement. And, say respondents, "When an exceptional case arises in the municipal court, the trial judge may order preparation of the transcript at the expense of the county." Hence, say respondents, California has evolved a procedure for this situation which, according to its lights, affords "fair and equal appellate review."

But the thrust of appellant's plea of inadequacy is not met by the proffered settled statement. As we have pointed out, appellant's petition alleges that the testimony at the trial as to checks and receipts was too complex to be compiled at a later date from memory and notation, and that she could not "safely proceed" with her appeal on that basis. Respondents' demurrer admits the truth of those allegations for the purposes of this proceeding. (*City Council* v. *Superior Court* (1960), 179 Cal.App.2d 389, 392 [3 Cal.Rptr. 796].) Appellant alleges that if she cannot obtain a transcript "she will be irreparably and irretrievably injured in her rights to justice"; the superior court sustained a demurrer which assumed the truth of this allegation; we cannot nevertheless hold that California affords "fair and equal appellate review." Just as the superior court must have accepted the truth of

appellant's allegations as to inability to proceed by settled statement, so must we. Upon this record we are required to assume that a settled statement would not afford an adequate method of appeal.

We do not mean to say, however, that the settled statement may not in most cases suffice for that purpose; the determination must rest with the municipal court in the exercise of its discretion. In the instant case, however, the charges of the petition that "it would be impossible for defendant's counsel to remember" the testimony of various witnesses as to the many checks and receipts involved; that appellant cannot "safely proceed with her appeal without the assistance of the official Reporter's Transcript"; that without such transcript "she will be irreparably and irretrievably injured"; that she "has duly taken each and every step required of her under the law and the Rules on Appeal . . . to be entitled to obtain an Order" for a free transcript; that "the duty of defendants and respondents herein to order and furnish to petitioner said transcript is an act which the law especially enjoins upon said defendants and respondents herein . . . as a duty resulting from their official positions," allege facts which, if true, are incompatible with the exercise of due discretion by the municipal court in denying the transcript.

The superior court sustained a general demurrer to this petition. This was error; the recited allegations certainly establish the insufficiency of the settled statement for purposes of appeal.

We conclude that respondents' attempted distinctions as to Griffin must fail. We note, too, that on two recent occasions the United States Supreme Court has reaffirmed the Griffin doctrine.

*Eskridge* v. *Washington State Board of Prison Terms & Paroles* (1957), 357 U.S. 214 [78 S.Ct. 1061, 2 L.Ed.2d 1269], involved a denial by the State of Washington of a free transcript to a petitioner, sentenced to life imprisonment, who set forth his poverty, the substantiality of trial errors, and the necessity of the transcript to prosecute the appeal. Rejecting Washington's defense that "petitioner might have utilized notes compiled by someone other than the official court reporter," since there was "nothing in this record to show" that such notes "were available" to petitioner (p. 215), the court holds upon the authority of Griffin that Washington had denied "a constitutional right guaranteed by the Fourteenth Amendment." (P. 216.) And in the recent case of

*Burns* v. *Ohio* (1958), 360 U.S. 252 [79 S.Ct. 1164, 3 L.Ed.2d 1209], Chief Justice Warren, speaking for the majority of the court held that under Griffin an indigent defendant in a criminal case could not be required to pay a filing fee before he was permitted to file a motion for leave to appeal to the highest appellate court.

The California courts have recognized that a deprivation of due process may occur in the inability of the indigent to appeal by reason of poverty. In holding that a defendant in a criminal case appealing from the denial of a writ of error *coram nobis* is entitled to be furnished a record, the majority opinion in *In re Paiva, supra,* 31 Cal.2d 503, pointed out: "(See also *State* v. *Criminal Court* (1942), 220 Ind. 4 [40 N.E.2d 971], in which . . . an application for a record at the expense of the state upon a showing that the defendant-petitioner 'is a poor person, without means of paying for a record which he wishes to use in perfecting an appeal from the judgment of the respondent court denying his petition for a writ of error *coram nobis*,' was denied. Such denial, it has been suggested, may amount to a deprival of due process. *Ex parte Davis* (1942), 318 U.S. 412 [63 S.Ct. 679, 87 L.Ed 868] ; *Barton* v. *Smith* (C.C.A. 9, 1947), 162 F.2d 330.)" (P. 508.) The minority opinion likewise states: "There is nothing in the record to indicate that Paiva does not have ample funds to pay for a transcript, and he made no application to proceed *in forma pauperis*. In the absence of such a showing, he has not been deprived of due process of law." (P. 513.) Likewise, we call attention to the illuminating discussion of this issue as pointed up by the Griffin case in the recent concurring opinion of Justice Traynor in *People* v. *Brown* (1960) 55 Cal.2d 64 [9 Cal.Rptr. 836, 357 P.2d 1072].

The United States Supreme Court has held that in such circumstances as those of the instant case, the indigent is entitled to the free transcript. He must, as an indigent, enjoy an equal protection in access to the full resources of our courts as that of the affluent. The right to be heard in the highest appellate court should not be lost because the law conditions it upon legal paraphernalia, in the form of a written record, which an accused person lacks the means to buy. The right of appeal cannot lie in that discriminatory morass in which it is accessible to the rich and denied to the poor. Whatever hardship poverty may cause in the society generally, the judicial process must make itself available to the indigent; it

must free itself of sanctions born of financial inability. The core of a free and democratic society lies in full and equal access to its courts.

The demurrer should be overruled and respondents permitted to answer. We reverse the order and the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied February 8, 1961, and respondents' petition for a hearing by the Supreme Court was denied March 9, 1961. Schauer, J., McComb, J., and White, J., were of the opinion that the petition should be granted.