[Civ. No. 7220.   Fourth Dist.   May 25, 1964.]

BLANCHE MAY PARKMAN, Plaintiff and Appellant, v. W. A. SAVAGE, as Real Estate Commissioner, Defendant and Respondent.

Yale, Wilson, Summers & Yale and William A. Yale for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Defendant and Respondent.

GRIFFIN, P. J.—Petitioner Blanche May Parkman, in her petition for a writ of mandate against the Real Estate Commissioner sought to set aside and annul an order of the commissioner suspending petitioner's real estate broker's license for a period of 60 days.

The trial court affirmed the decision of the Real Estate Commissioner. Plaintiff appeals and contends that the evidence

is not sufficient to support the finding that petitioner had violated Business and Professions Code, section 10176, subparagraph (i) [fraud and dishonest dealing], section 10177, subparagraph (f) [conducting herself in a manner which would have warranted the denial of her application for a real estate license], and Probate Code, section 583.

The commissioner and the trial court made a determination that petitioner was subject to disciplinary action for such violations.

Probate Code, section 583, provides: "No executor or administrator may purchase any property of the estate, or any claim against the estate, directly or indirectly, nor be interested in any such purchase. . . ."

### FACTS

Juanita B. Aaronson died December 15, 1956, and on February 5, 1957, her husband, Sibley W. Aaronson, was the duly appointed executor of her will and he and his daughter, Noreen (Doreen) Beggs were the beneficiaries under the will. Petitioner, a licensed real estate broker, took a listing of the property in the estate from the executor at a price of $35,000 on August 4, 1957. The property remained in the estate, unsold, until February 12, 1959. During the probate of the estate, Sibley was remarried to one Florence Munson Aaronson who had a daughter named Janet McNeill. In order to effect a sale of the property, it was agreed that Sibley's new wife Florence would put up her money to buy the real property from the estate, take it in the name of her daughter Janet, who would in turn deed it to Sibley and Florence Aaronson. On May 6, 1959, an offer by Janet to purchase the property for $20,000, $2,000 down, was prepared by petitioner as a real estate broker and this bid was submitted to Sibley as executor, through his attorney, to purchase the property at its inheritance tax appraised value of $20,000. Janet's offer was submitted to the court and the sale was confirmed, without disclosing to the court the facts pertaining to the transaction, with Sibley as executor and seller and Janet as purchaser. Florence deposited the downpayment and she was arranging to finance the balance due through institutional financing. The lending institution required that Florence's husband Sibley join in the signing of the loan papers. Florence had the title vest in her name, with Sibley as joint tenant. On August 24, 1959, Janet deeded the property to Florence and Sibley, as joint tenants, without consideration. Petitioner, on

behalf of her real estate firm, exacted a fee of $1,000 for her services, which fee was apparently paid from the estate.

Janet, who also was a real estate broker, said that there was a conflict between her broker's office and petitioner's office and a complaint was lodged by Janet with the Real Estate Commissioner against petitioner. The charge was: "That prior to the obtaining of the listing for the sale of the property both respondents represented to Sibley William Aaronson, his wife and his step-daughter, that the real property could be legally and lawfully sold to the Executor by the use of a 'dummy'; that the Aaronsons and Janet P. McNeill believed these representations and proceeded with the transaction above outlined under the direction and control of respondents; that the said transaction was illegal and unlawful in that section 583 of the Probate Code of the State of California, provides that 'No Executor may purchase any property of the estate directly or indirectly'; that respondents well knew that said transaction was unlawful and illegal. . . ." The commissioner so found. It is claimed that the transaction was with the approval of all heirs and that accordingly it was not illegal or unlawful; that while the wording of Probate Code, section 583, would appear to create an unqualified prohibition against a direct or indirect purchase by an executor, section 583, as judicially interpreted, has been held to be designed solely for the protection of those interested in the estate, and the purchase by an executor directly or indirectly from the estate is not void but voidable only at the instance of those interested in the estate (citing *United States Fid. & Guar. Co.* v. *Postel,* 64 Cal.App.2d 567 [149 P.2d 183]); that since an indirect purchase by the executor with the approval and acquiescence of all heirs is neither illegal, unlawful, void, voidable or otherwise wrongful, then of necessity the broker's participation in such a sale cannot be fraudulent, dishonest, or otherwise susceptible to any charge of misconduct under the rules of the Business and Professions Code. (*Manning* v. *Watson,* 108 Cal.App.2d 705 [239 P.2d 688].)

The finding that the petitioner, in bad faith, obtained an offer to purchase property in the estate from Janet McNeill; that she arranged the sale of the estate property using Janet McNeill as a "dummy" because she knew that sale of the property to the actual purchaser would be illegal, has evidentiary support. The property was estate property. Its sale would be confirmed by the superior court and one of the

actual purchasers was the executor of the estate. The superior court confirmed the sale to Janet and immediately afterwards she transferred the property to the executor of the estate and his wife for no consideration. Petitioner and Parkman Realty made $1,000 on the sale. Petitioner well knew that the transaction was illegal and unlawful. The superior court found all these facts to be true. In *Marks* v. *Watson,* 112 Cal.App.2d 196, 200 [245 P.2d 1121], it was said in this respect that: "The 'degree of harm' to the victim is not a matter of controlling importance in fixing the penalty in disciplinary proceedings. It is simply one of the facts to be taken into consideration. The basic reason for disciplinary action in matters of this kind is the protection of the public against unethical and dishonest conduct on the part of those engaged in the real estate business. In view of this purpose we cannot say that the revocation of plaintiff's license establishes, as a matter of law, an abuse of discretion on the part of the Real Estate Commissioner." The question was touched upon in volume 11, Opinions of the Attorney General of California, 108, 109, where it was declared that: "A real estate licensee may be disciplined for a substantial misrepresentation even though the other party to the transaction suffers no pecuniary loss." See also cases cited therein. ■ It therefore appears that a real estate broker who arranges a transaction in violation of the law may be disciplined by the Real Estate Commissioner, regardless of the fact that the illegal transaction, once consummated, is not void but only voidable. (*Karrell* v. *Watson,* 116 Cal.App.2d 769 [254 P.2d 651, 255 P.2d 464].)

Judgment affirmed.

Coughlin, J., and Brown, J., concurred.