[Civ. No. 36998. Second Dist., Div. Four. Mar. 23, 1971.]

JAMES WELLINGTON SMALL, Plaintiff and Appellant, v. BURTON E. SMITH, as Real Estate Commissioner, etc., Defendant and Respondent.

452

## COUNSEL

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Arthur C. deGoede and Michael L. Abrams, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

IRWIN, J.*—Petitioner's license as an inactive real estate broker was revoked pursuant to Business and Professions Code sections 10177, subdivision (j) and 10177, subdivision (f) for dishonest acts.[1] The revocation

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Section 10177. "The commissioner may suspend or revoke the license of any real estate licensee, . . . who has . . . :

"(f) Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license. . . .

"(j) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

was pursuant to the recommendations and proposed decision of a hearing officer after an administrative hearing which was duly held on the 15th of May, 1969. Thereafter petitioner sought a writ of mandate to order the commissioner to reinstate appellant's real estate broker's license. The superior court denied the writ and this appeal followed.

We must affirm the judgment denying the writ for the reasons hereinafter set forth.

## The Facts

In 1953 William Porter and Willabel Porter purchased 20 acres of unimproved land in San Bernardino County. On December 20, 1961, the Porters entered into an installment sales contract whereby the Porters agreed to sell and convey this land to appellant and his wife, the Smalls, for $15,000 with $500 down and payments of $135 a month starting February 1, 1962. Paragraph A of this agreement set forth the following: "In addition to the said $135.00 payments the buyer herein shall pay an additional $100 per month for a period of 10 months or until such time as an additional $1,000.00 has been paid on the principal balance of this contract over and above the said $135.00 per month payments. Property to be escrowed when said $1,000.00 has been paid and buyer shall assume existing trust deed on said property and execute a 2nd trust deed and note in favor of seller equal to the amount of difference between the existing trust deed and balance of this contract in escrow." The Smalls paid the $500 down payment, the $1,000 in special payments and $6,000 besides, for a total of $8,300.

On or about October 8, 1965, the Porters released the west 10 of the 20 acres to the Smalls in accordance with the contract. Title to the remaining acreage was never transferred. No escrow was opened as set out in paragraph A of the original agreement nor did the Smalls request it. Had this been done, the Smalls would have had to assume an existing trust deed and execute a second trust deed and note. The Porters conceded their obligation to convey under the terms of the agreement. The Smalls continued to make payments to the Porters on their original purchase contract through December 1965. On March 2, 1966, the Porters mailed a notice of intention to declare forfeiture to the Smalls for their default, asking for back payments covering January, February and March 1966. On June 1, 1966, the Porters mailed the Smalls, by certified mail, a notice of forfeiture which was delivered to appellant on June 6, 1966.

On July 6, 1962, the Smalls had sold 2½ acres of the aforesaid unconveyed 10 acres to William A. Lundgren under an installment sales contract for $7,950, with $1,000 down and payments starting

August 1, 1962, at $100 a month through December 1962 and on January 1, 1963, at $73 a month until paid in full.

After the Porters' forfeiture occurred on June 6, 1966, appellant collected from Lundgren eight $70 payments, which were then delinquent. The last such payment made was on June 19, 1967 and had become due on June 1, 1966, six days before receipt by appellant of the notice of forfeiture. Appellant never asserted against Lundgren any right of forfeiture under the Lundgren-Small agreement. After March 2, 1966, when appellant already had received the Porters' notice of intention to declare a forfeiture, he collected from Lundgren $280 on March 13, 1966, $70 on March 17, 1966, and $70 on April 26, 1966.

In early 1967, the Porters sold the remaining 10 acres (including the Lundgren 2½-acre parcel) to Thomas Johnson and wife. Appellant never refunded any money to Lundgren and Lundgren never received title to the land in question. Lundgren sued Small and alleged that he paid $4,400 on the agreement.

In the Porter-Small-Lundgren transactions, appellant acted as principal and not as broker.

There is no dispute as to the accuracy of the foregoing statement of facts. Appellant was not present at the commissioner's hearing and offered no evidence there or in the trial court.[2] Based on the above facts, the commissioner concluded that "The receipt and acceptance by respondent [appellant here] Small of payments made by Lundgren under his installment sales contract subsequent to the receipt of the notice of forfeiture were dishonest acts."

Appellant now contends (1) his claim of right to the Lundgren payments precludes a license revocation; (2) the Real Estate Commissioner's failure to find a nexus between the dishonesty with which he is charged and his fitness to hold a broker's license voids the revocation of his license; (3) the standard under which his guilt was determined is uncertain; and (4) he was denied equal protection of the law.

■ In reviewing the decision of the commissioner, in administrative proceedings such as this, the trial court exercises its independent judgment to determine whether the commissioner's findings are supported by the weight of the evidence. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal. Rptr. 234, 481 P.2d 242]; *Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790 [136 P.2d 304]; *Laisne* v. *Cal. St. Bd. of Optometry* (1942)

---

[2]Appellant filed a notice of defense and was represented at the hearing and before the trial court by his counsel.

19 Cal.2d 831, 840 [123 P.2d 457]; *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 85 [87 P.2d 848].)

The determinations made by the trial court must be accepted by the Court of Appeal if they are supported by substantial evidence. This court is obligated to consider the evidence in the light most favorable to the commissioner, giving to the judgment the benefit of every reasonable inference and resolving all conflicts in its favor. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Manning* v. *Watson* (1952) 108 Cal.App.2d 705, 712 [239 P.2d 688].) ■ Findings of fact and conclusions of law were not requested of the trial court and, therefore, were waived. (Cal. Rules of Court, rule 232(c).) Thus, findings necessary to support the judgment will be implied and if there is any substantial evidence to support the judgment, it must be affirmed. (*Lane & Pyron, Inc.* v. *Gibbs* (1968) 266 Cal.App.2d 61, 65 [71 Cal.Rptr. 817].) Here, the judgment of the superior court must necessarily be based upon implied findings which include (a) dishonesty of the appellant; and (b) lack of a good faith claim of right.

■ Appellant argues that he had a legitimate right in good faith to retain Lundgren's payments received by him in 1966 and 1967 because Lundgren's failure to make payments on time caused the forfeiture of appellant's rights under the Porter-Small contract, to his damage by more than $4,400, the amount he had received from Lundgren. The contention is without merit. As already noted, appellant was not personally present and no evidence was offered or received, either before the commissioner or the trial court, supporting his present contentions. After the March 2, 1966, notice of intention to forfeit by Porter and before the actual forfeiture, appellant had received $420 from Lundgren which he could and should have used to avoid the forfeiture if he were acting in good faith.[3] After forfeiture on July 6, 1966, appellant received and retained $560. Yet at no time did appellant notify Lundgren of the forfeiture or even attempt to enforce any of his rights under the Lundgren-Small sales contract because of any default by Lundgren. How his silence and inaction in this respect after his own default can constitute a good faith claim to receive payments for property he did not own and could never convey is beyond comprehension.

Appellant's attempt to claim some kind of defense based on equitable setoff for the first time on appeal is likewise without merit. (*Serenko* v.

---

[3]Respondent makes the argument that appellant's failure to apply Lundgren's payments to the Porter-Small sales contract was in violation of Civil Code section 2985.3, a crime, and was itself an additional dishonest act. Whether the Porter-Small contract is an *"encumbrance"* within the meaning of that section, we do not decide.

*Bright* (1968) 263 Cal.App.2d 682, 688 [70 Cal.Rptr. 1]; *Bohn* v. *Watson* (1954) 130 Cal.App.2d 24, 37 [278 P.2d 454].)

Appellant's reliance upon *Hogg* v. *Real Estate Commissioner* (1942) 54 Cal.App.2d 712, 714 [129 P.2d 709], is misplaced. In that case there was substantial evidence by the licensee to show good faith. The court said: "It is our opinion that the undisputed facts of the case support the position so taken by appellant." In the case at bench, the implied finding of the trial court is to the contrary.

The holding in *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], does not apply here. In that case the court was called upon to determine whether private non-criminal activity unrelated to the employment of a school teacher was "immoral or unprofessional conduct or moral turpitude" indicating an unfitness to teach. The court held that it was incumbent upon the administrative agency to determine if the charged conduct indicated unfitness to teach. In the instant case, the Legislature has determined specifically that "fraud or dishonest dealing" constitute grounds for suspension or revocation. The term "dishonesty" has been defined in the scope of real estate disciplinary proceedings as follows: " 'Dishonesty' necessarily includes the element of bad faith. As defined in the dictionaries and in judicial decisions, it means fraud, deception, betrayal, faithlessness. [Citations.] As put by the court in *Alsup* v. *State*, 91 Tex. Cr. 224 [238 S. W. 667], ' "Dishonesty" denotes an absence of integrity; a disposition to cheat, deceive, or defraud; deceive and betray.' " (*Hogg* v. *Real Estate Commissioner* (1942) *supra*, 54 Cal. App.2d 712, 717.) ■ As so defined dishonesty in itself demonstrates unfitness to be a broker or at least to require discipline as authorized by the statute.

"The basic reason for disciplinary action in matters of this kind [real estate broker's disciplinary proceedings] is the protection of the public against unethical and dishonest conduct on the part of those engaged in the real estate business." (*Marks* v. *Watson* (1952) 112 Cal.App.2d 196, 200 [245 P.2d 1121]; *Parkman* v. *Savage* (1964) 227 Cal.App.2d 436, 439 [38 Cal.Rptr. 664].) It is our view that where, as here, dishonesty of a real estate broker has been proved by substantial evidence, there is no need to make an additional and specific finding on unfitness.

The Supreme Court in *Morrison* v. *State Board of Education* (1969) *supra,* 1 Cal.3d 214, 237, specifically pointed out that "Petitioner's motives at the time of the incident involved neither *dishonesty* nor viciousness, . . ." (Italics added.) Even if *Morrison* applied here, there is an implied finding through the independent judgment of the trial court that the dishonest conduct of appellant made him unfit to be a broker.

■ Both the purpose and the standards for determining guilt in disciplinary proceedings against real estate brokers and attorneys are essentially the same. (*Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 790 [51 Cal.Rptr. 825, 415 P.2d 521]; *Black* v. *State Bar* (1962) 57 Cal.2d 219, 222 [18 Cal. Rptr. 518, 368 P.2d 118]; *Furman* v. *State Bar* (1938) 12 Cal.2d 212, 229 [83 P.2d 12]; *Cornell* v. *Reilly* (1954) 127 Cal.App.2d 178 [273 P.2d 572]; *Marks* v. *Watson* (1952) *supra,* 112 Cal.App.2d 196.) "It may be conceded that in disciplinary administrative proceedings the burden of proof is upon the party asserting the affirmative (*Bley* v. *Board of Dental Examiners,* 87 Cal.App. 193 [261 P. 1036]), and that guilt must be established to a reasonable certainty (*Furman* v. *State Bar,* 12 Cal.2d 212 [83 P.2d 12]; *Coffman* v. *Board of Architectural Examiners,* 130 Cal.App. 343 [19 P.2d 1002]) and cannot be based on surmise or conjecture, suspicion or theoretical conclusions, or uncorroborated hearsay. (See cases collected 2 Cal.Jur.2d 248, § 145.) But it is now well settled that such proceedings are not criminal in nature, and are not governed by the law applicable to criminal cases. (See many cases collected 2 Cal.Jur.2d 169, § 87.) The contrary language found in the *Messner* case (87 Cal.App. 199, 205) above quoted has been classified as a mere 'dictum,' and expressly disapproved. (*Webster* v. *Board of Dental Examiners,* 17 Cal.2d 534, 539 [110 P.2d 992].) The object of an administrative proceeding aimed at revoking a license is to protect the public, that is, to determine whether a licensee has exercised his privilege in derogation of the public interest, and to keep the regulated business clean and wholesome. Such proceedings are not conducted for the primary purpose of punishing an individual. (See cases collected 2 Cal.Jur.2d 169, § 87, at p. 170.) Hence, such proceedings are not criminal in nature." (*Cornell* v. *Reilly* (1954) *supra,* 127 Cal.App.2d 178, 183-184.) In *Furman* v. *State Bar* (1938) *supra,* 12 Cal.2d 212, 229, wherein an attorney at law was charged with deliberate fraud, the court said "It should not be forgotten that a disbarment proceeding is *quasi-criminal* in character; and that although it is not essential that the guilt of the accused be established beyond a reasonable doubt, nevertheless his guilt must be established by 'convincing proof to a reasonable certainty.' "

■ In the instant case there is nothing in the record to indicate that either the commissioner or the trial judge applied an improper standard in determining the *"dishonesty"* of appellant. The record does disclose substantial evidence, without conflict, and to a reasonable certainty that appellant was dishonest by accepting and retaining the eight payments made after July 6, 1966, when he knew he could not comply with the terms of the Small-Lundgren sales contract.

Since we must assume that the lower court followed the proper standard

in reaching its decision, we do not reach appellant's final argument that he has been denied equal protection of the law. █ Moreover, appellant makes this contention for the first time on this appeal and he is thereby foreclosed from raising the defense at this late hour. (*Preston* v. *Municipal Court* (1961) 188 Cal.App.2d 76, 82 [10 Cal.Rptr. 301].) Such defense should have been raised before the commissioner or the trial court. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 197 Cal.App.2d 182, 187 [17 Cal.Rptr. 167].) Appellant relies upon *Egan* v. *Teets* (9th Cir. 1957) 251 F.2d 571, wherein the court stated at page 576: ". . . a constitutional question may be raised at any time if the matter appears on the face of the record, or if it is of such nature that it could not have been raised before." Here the constitutional issue raised by appellant does not appear on the face of the record and is a matter which could have been raised before.

Our review of the record discloses substantial evidence to support the commissioner's decision and the trial court's judgment.

The judgment is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1971.